# In the United States Court of Federal Claims

No. 09-258C
(Filed: August 18, 2010)

```
*************************************
                                      *
GLADYS S. VANDESANDE,                 *
                                      *
              Plaintiff,              *    Breach of Contract; Motion to
                                      *    Dismiss; Title VII; Settlement
       v.                             *    Agreement; Consent Decree;
                                      *    EEOC
THE UNITED STATES,                    *
                                      *
              Defendant.              *
                                      *
*************************************
```

*Roderick V. Hannah* of Hannah & Jankowski, Plantation, Fl, for Plaintiff

*Dawn E. Goodman*, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Todd M. Hughes*, Deputy Director

---

**ORDER & OPINION**

---

**DAMICH**, Judge:

In this breach of contract action against the United States, Plaintiff Gladys S. Vandesande alleges that her former employer, the United States Postal Service ("the USPS" or "the Service"), violated the terms of a Stipulation Agreement Regarding Damages ("Stipulation Agreement" or "the Agreement") that the parties reached in settlement of a Title VII claim of discrimination on the basis of pregnancy. Ms. Vandesande had entered into the Agreement following an initial determination of USPS liability by an Administrative Law Judge ("ALJ") of the United States Equal Employment Opportunity Commission ("EEOC"). Ms. Vandesande avers that the Government breached the Agreement by: 1) failing to make certain tax consequence and interest payments owed under the terms of the Agreement, and 2) refusing her reinstatement. Compl. ¶ 10.

The Government has moved to dismiss the suit pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction, arguing that the Agreement is not a settlement agreement enforceable as a contract, as Plaintiff characterizes it, but rather an EEOC order over which this Court lacks enforcement jurisdiction.

The Government similarly moves for dismissal pursuant to RCFC 12(b)(6) for failure to establish the existence of a contract with the United States.  For the reasons discussed below, the Government's motion is GRANTED.

**I.      Background[1]**

In January 2003, EEOC Judge Ana M. Lehmann issued an order, Compl. Ex. A, in which she advised of preliminary findings that, on several occasions in 1998 and 1999, Ms. Vandesande had been discriminated and retaliated against by the USPS in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), as it amended Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16.  The order indicated that a hearing would be reconvened at a later date to consider the issue of damages.  In the meantime, the parties reached a Stipulation Agreement Regarding Damages, outlining payments the USPS would make to Ms. Vandesande.  Compl. Ex. B.  The payments pursuant to this agreement included: compensation for back pay and lost overtime, ¶¶ 4-5; lost sick and annual leave, ¶ 6; interest payments, ¶ 8; tax consequence payments, ¶¶ 12-14; payments for pain and suffering, ¶ 15, medical and other expenses, ¶¶ 16-18, 20; and a lump sum payment in exchange for Ms. Vandesande's resignation, ¶ 21.  The Stipulation Agreement itself provided that it was "to be attached to and made part of the Final Order" to be issued by Judge Lehmann and "which shall become effective upon the issuance of the Final Order."  Compl. Ex. B.  The EEOC's Final Order of June 23, 2003, incorporated the terms of the Agreement and closed the case.  Compl. Ex. C.[2]  The USPS then issued a Notice of Final Action, in which it agreed to implement the decision of the Administrative Judge and to adopt the terms of the Agreement.  Compl. Ex. D.  This Notice informed Ms. Vandesande of her right to appeal to the EEOC within 30 days, or, in the alternative, to file a civil action in U.S. District Court within 90 days of either the Postal Service's final action or the EEOC's final decision on appeal.  *Id.*

While the USPS paid Ms. Vandesande approximately $560,000 under the terms of the Agreement, over the course of 2004 a disagreement arose concerning the Service's alleged failure to make certain interest and tax consequence payments.  Compl. ¶ 10; Def.'s App 32, 34-36.[3]  Ms. Vandesande twice informed the USPS in writing that she regarded the Service as in breach of the Agreement.  A32.  The USPS replied in a November 4, 2004, letter (later referenced by the EEOC as the "Final Agency Decision" or "FAD"), rejecting her claims for failure "to pursue your request by not submitting the necessary information."  *Id.*

On January 10, 2005, Ms. Vandesande appealed this FAD to the EEOC.  A38.  In a March 30, 2006, decision, the EEOC held that "complainant [Ms. Vandesande] failed to provide

---

[1] The recitations that follow do not constitute findings of fact by the court.  Rather, this background is drawn from the facts presented in Plaintiff's complaint and the documentary material accompanying Defendant's motion to dismiss.  At this stage, the court assumes as true all facts contained in the complaint and draws reasonable inferences in Plaintiff's favor, *see* discussion *infra* Part III.A.

[2] "The parties have agreed to abide by and comply with the specific terms of the Stipulated [sic] Agreement Regarding Damages, a copy of which is attached hereto, made a part hereof, and incorporated herein by reference.  This case is hereby closed."  Final Order at 3.

[3] Defendant's Appendix to its Motion to Dismiss, referred to hereafter as "A_."

the agency with probative calculations or expert information needed to make payment on her tax consequences." A44. As a result, "the complainant has not met her burden of showing that the agency failed to comply with the agency's August 6, 2003 final order," incorporating the terms of the Agreement. *Id.* The EEOC denied Ms. Vandesande's request for reconsideration on May 17, 2006. A19.

Ms. Vandesande next sought relief by filing suit in the U.S. District Court for the Southern District of Florida on August 18, 2006, alleging breach of contract by the USPS for failure to comply with the terms of the Agreement. A1-7. By a joint stipulation pursuant to Fed. R. Civ. P. 41(a)(1) and a Final Order of the court, both dated May 31, 2007, the district court dismissed Ms. Vandesande's complaint without prejudice. A8-9. On several occasions in July 2007 (the USPS and Ms. Vandesande cite different dates), Ms. Vandesande corresponded with the Service expressing her desire to submit a notice of breach of the Agreement. A45-46. Dissatisfied with the response from the USPS, Ms. Vandesande filed an appeal before the EEOC dated September 30, 2007, renewing her contention that the Service had breached the Agreement. A46-48. On February 5, 2008, the EEOC denied her appeal, affirming the Service's finding that it had not breached the Agreement. A49-55.

On May 8, 2008, Ms. Vandesande filed suit against the Postmaster General in the Southern District of Florida seeking *de novo* review of her discrimination claims. A10-16. After full briefing by both parties, District Judge William P. DiMitrouleas granted the Government's motion to dismiss on February 18, 2009, finding Ms. Vandesande's complaint untimely pursuant to 42 U.S.C. § 2000e-16(c), for failure to file within 90 days of the August 6, 2003, USPS Notice of Final Action. A17-31.

Ms. Vandesande filed a complaint in the U.S. Court of Federal Claims on April 24, 2009, under a breach of contract theory. The Government has moved to dismiss the case pursuant to RCFC 12(b)(1) and 12(b)(6). In response to the court's April 9, 2010 Order, the Government asserted *res judicata* and collateral estoppel as additional grounds for dismissal. This motion is presently before the court.

## II.    Standard of Review

Defendant argues for dismissal for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(6), on the ground that the Stipulation Agreement was not a contract with the United States, but rather a consent decree of the EEOC incorporated in the Final Order of Judge Lehmann. Dismissal, therefore, is further warranted pursuant to RCFC 12(b)(1) because the Court of Federal Claims lacks subject matter jurisdiction to enforce orders of the EEOC.

When passing on a motion to dismiss, a court's role "is necessarily a limited one" and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982). The court must presume all undisputed factual allegations to be true, and construe all reasonable inferences in the plaintiff's favor. *See Scheuer* 416 U.S. at 236; *Henke v. United States*, 60 F.3d 795, 797

(Fed. Cir. 1995); *The George Family Trust ex rel George v. United States*, 91 Fed. Cl. 177, 190 (2009).

With respect to a RCFC 12(b)(1) motion, the plaintiff bears the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998). When making this jurisdictional inquiry, the court may examine evidence outside the pleadings. *Land v. Dollar*, 330 U.S. 731, 735, n.4 (1947); *Shamrock Foods Co. v. United States*, 92 Fed. Cl. 339, 343 (2010). If subject matter is found to be lacking, the court must dismiss the complaint under RCFC 12(h)(3). *See Grayton v. United States*, 92 Fed. Cl. 327, 331 (2010).

If the court determines that it possesses the requisite subject matter jurisdiction to entertain some or all of a plaintiff's allegations, the court must still dismiss those claims which fail to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(6). *See Boye v. United States*, 90 Fed. Cl. 392, 401 (2009). In the context of a contractual dispute, as here, the plaintiff "must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of that contract, (3) a breach of that duty, and (4) damages caused by the breach." *Westover v. United States*, 71 Fed. Cl. 635, 640 (2006) (quoting *San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)).

Both grounds of Defendant's motion to dismiss are resolved concurrently by the Court's determination of the question whether the Stipulation Agreement constitutes an independent contract with the United States.

### III.   Discussion

Defendant's motion to dismiss is founded on the argument that the Stipulation Agreement at the core of Plaintiff's breach of contract claim is actually "an EEOC Order, not a contract with the United States, that she seeks to enforce." Def.'s Mot. to Dismiss at 7. Dismissal, it argues, is required because this court does not have jurisdiction to enforce an order of the EEOC. *Id.*

Defendant acknowledges generally that settlement agreements with the United States fall under the definition of contracts, the breach of which implicate the Tucker Act jurisdiction of the Court of Federal Claims, *Stovall v. United States*, 71 Fed. Cl. 696, 698 (2006) (citing *Massie v. United States*, 166 F.3d 1184, 1188 (Fed. Cir. 1999)). Defendant avers, however, that the incorporation of the Stipulation Agreement into the Final Order of the EEOC Administrative Law Judge, pursuant to the terms of the Stipulation Agreement itself, made it a consent decree subject to enforcement by the EEOC, rather than a mere settlement agreement between Plaintiff and an agency of the Federal government. Enforcement of an EEOC consent decree, according to Defendant, is not within the jurisdiction of this court but rather a matter for the EEOC pursuant to the statutory scheme prescribed by Title VII.

The focus of the parties' briefs was whether the Stipulation Agreement was a consent decree. Both parties cite the Supreme Court's decision in *Buckhannon Board and Home Care, Inc. v. West Virginia Dept. of Health and Human Services*, 532 U.S. 598 (2001) for the legal

requirements of a consent decree. In *Buckhannon*, the question was whether the plaintiff was a prevailing party for purposes of recovering attorneys' fees under certain fee-shifting statutes. The Court held that the term "prevailing party" did not extend to a party "that has failed to secure a judgment on the merits or a court-ordered consent decree." *Id.* at 600. In the course of its analysis, the Court discussed the elements of consent decrees. *Id.* at 604. The First Circuit in *Aronov v. Napolitano*, 562 F.3d 84, 90 (1st Cir. 2009), interpreted *Buckhannon* to establish three related factors that characterize consent decrees: first, there must be a change in the legal relationship of the parties that is "court-ordered." Second, there must be "judicial approval of the relief vis-à-vis the merits of the case." And, third, there must be "judicial oversight and ability to enforce the obligations imposed on the parties." *Id.* at 90.

      A. Consent Decrees and Private Settlement Agreements

Amidst the parties' disputation, however, as to whether the Stipulation Agreement does indeed meet the criteria of what is meant by a "court-ordered consent decree," the Court requested further briefing from the parties on a preliminary question unaddressed in the original argumentation: whether consent decrees and settlement agreements are inherently mutually exclusive. The additional briefing was requested because the inquiry into consent decree *vel non* would be academic if the Stipulation Agreement, despite its incorporation into the Final Order of the ALJ, nevertheless obtained or retained the status of an independent legal agreement between the parties. If that were so, this court would clearly have jurisdiction over Plaintiff's claim for breach of contract and Defendant's motion to dismiss would fail. *Slattery v. Dep't of Justice*, 590 F.3d 1345, 1347 (Fed. Cir. 2010) ("A settlement agreement is a contract . . .").

Defendant argues that consent decrees and settlement agreements are mutually exclusive: "if the Court determines that the Stipulation Agreement at issue in this case is a consent decree, it cannot also find that it is a settlement agreement." Def.'s Resp. to Court's April 9, 2010 Order at 1 ("Def.'s Supp. Br."). Defendant bases its argument on the "plain definitions" of the two terms, informed by case precedent discussing those terms as defined in the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(g)(1) and (g)(6). *See Benjamin v. Jacobson*, 172 F.3d 144, 157 (2nd Cir. 1999) (*en banc*) ("*Benjamin III*"); *Rowe v. Jones*, 483 F.3d 791, 796 (11th Cir. 2007). In *Benjamin III*, in an action brought by prison officials for termination pursuant to the PLRA of certain consent decrees regarding conditions in New York City jails, the appellate court, acting *en banc*, reversed the part of a panel decision that reasoned that "federal consent decrees are not only federal court judgments *but also, and separately*, contracts arising under state law." *Benjamin v. Jacobson*, 124 F.3d 162, 178 (2nd Cir. 1997) ("*Benjamin II*") (emphasis added). The en banc opinion noted the full court's "disagreement with the *Benjamin II* panel's view that federal consent decrees not supported by [need-narrowness-intrusiveness] findings remain enforceable in state courts on the theory that settlement agreements are both private agreements and consent decrees." *Benjamin III* at 157. In reviewing the definitions of "consent decree" and "settlement agreement" under the PLRA, the court concluded, "Given these definitions, it appears that Congress sought to make the Act's concepts of consent decrees and private settlement agreements *mutually exclusive*." *Id.* (emphasis added).

The 11th Circuit in *Rowe*, elaborating on the statutory definitions that Congress laid out in the PLRA, also referred to a "common understanding" that supports the distinction between

private settlement agreements and consent decrees. 483 F.3d at 796. Defendant argues that, "as suggested by *Rowe*, the commonly accepted definitions delineated by the Supreme Court in *Buckhannon* mirror the distinction embodied in the PLRA." Def.'s Supp. Br. at 3. Furthermore, because the Stipulation Agreement was incorporated into the Final Order of the EEOC ALJ, a holding that the United States Court of Federal Claims could mutually possess jurisdiction to enforce the terms of the Agreement would undermine the EEOC's authority to enforce its own order. *Id.* at 4.

While Plaintiff, however, cites a wealth of precedent for the proposition that "consent decrees have attributes of both contracts and judicial decrees or agency administrative orders," Pl.'s Supp. Br. in Resp. to Def.'s Mot. to Dismiss at 2 ("Pl.'s Supp. Br."), with one exception, the cases that Plaintiff cites merely establish that in certain contexts consent decrees are to be analyzed or interpreted according to contact principles, but not necessarily that they are also contracts separate from their existence as judicial orders. The court, therefore, is not persuaded that the contractual attributes of consent decrees support simultaneous breach of contract jurisdiction in a judicial forum entirely distinct from the forum that entered the decree.

Plaintiff, for example, cites *Local No. 93, Inter. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 518 (1986) ("*Local No. 93*"), wherein the Supreme Court noted that consent decrees "closely resemble contracts" and stated that "[t]he question is not whether we can label a consent decree as a 'contract' or a 'judgment,' for we can do both." The issue in *Local No. 93* was whether a district court consent decree was an "order" for purposes of a provision in Title VII that prohibited any "order of the court" from providing relief for nonvictims of discriminatory practices. The Court determined that the contractual, "voluntary nature" of the consent decree, stemming from an agreement of the principal parties regarding steps to address claims of racial discrimination in firefighter hiring and promotion, sufficiently trumped its judicial-act nature such that the intervenor-union's invocation of the "order of the court" prohibition was unavailing. In short, the decision's focus on the voluntariness of the consent decree clearly highlighted its contractual resemblance, but nothing in the decision established that violation of the terms of a consent decree could be litigated separately and solely as a breach of contract.

Similarly, in *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236 (1975), the Court advised that "since consent decrees and orders have many of the attributes of ordinary contracts, they should be *construed* basically as contracts." (emphasis added). On that basis, the Court reasoned, "reliance upon certain aids to construction is proper, as with any other contract." *Id.* at 238.

Plaintiff also cites, inter alia, the decision of the 5th Circuit in *United States v. Alcoa, Inc.*, 533 F.3d 278 (2008), in support of the dual nature of consent decrees as both judgments and contracts. "Consent decrees are both contracts and legal instruments." *Id.* at 283. In *Alcoa*, the issue was whether the district court erred in accepting a stipulated order regarding a limited breach of certain provisions of a consent decree agreed to by citizens groups, the government, and the operator of an aluminum plant concerning environmental conditions. The plaintiff citizens objected that the stipulated order was "a modification of the consent decree not agreed to in writing by all parties." *Id.* at 283. The 5th Circuit was not persuaded that the district court

had erred, reasoning that the order was "implementing a remedy, not modifying the decree." *Id.* at 284. The appellate court applied contractual analysis in affirming the district court: "The contract doctrine of substantial performance with its offering of remedies short of a rescission of the contract informs the question of whether the district court 'modified' the decree or offered a remedy . . ." *Id.* The trial court was allowed a certain latitude in fashioning an acceptable remedy of the breach of the consent decree because, "[b]y striking a deal with Alcoa and the government in the consent decree, plaintiff citizens 'bound . . . [themselves] to an enforceable judicial order.'" *Id.* at 288 (citing *United States v. City of Jackson*, 359 F.3d 727, 732 (5th Cir. 2004). Significantly, however, the appellate court also distinguished the dual nature of consent decrees: although "[c]onsent decrees have elements of both contracts and judicial decrees," *id.*, they "are *more than* contracts. They are also enforceable judicial orders." *Id.* at 286 (emphasis added). Ultimately, "[c]onsent decrees are judgments despite their contractual nature." *Id.* at 288.

With one exception, therefore, the cases that Plaintiff cites, however, merely establish that in certain contexts consent decrees are to be analyzed or interpreted according to contract principles, but not necessarily that they are also contracts separate from their existence as judicial orders.

More on point is Plaintiff's citation to *Angle v. United States*, 709 F.2d 570 (9th Cir. 1983) for the proposition that a settlement agreement incorporated into an order by an administrative entity may still confer breach of contract jurisdiction in this court under the Tucker Act. In *Angle*, a settlement between the United States and certain groups of Indians, entered by the Indian Claims Commission as a "final Determination or Judgment," *Thompson v. United States*, 13 Ind. Cl. Comm. 369 (1964), was the basis for a subsequent action for money damages and injunctive relief in the United States District for the Eastern District of California, pursuant to the "little Tucker Act," 28 U.S.C. 1346(a)(2). The 9th Circuit agreed with the district court that "the Settlement Agreement, which is embedded in the decree of the Claims Commission, is a 'contract' within the meaning of the Tucker Act" (although it held that contract jurisdiction otherwise failed because the plaintiffs were not parties to the settlement agreement and judgment). *Angle*, 709 F.2d at 573.

However, as Plaintiff has also noted in its brief,[4] the Federal Circuit in an unpublished decision has held the mirror opposite. In *Blodgett v. United States*, 101 F.3d 713 (1996), the plaintiff sued in the Court of Federal Claims over the alleged violation of a consent decree entered by the United States District Court for the District of Minnesota involving a dispute with the Federal Trade Commission. One of the counts was for breach of contract. The Federal Circuit summarily affirmed this court's decision dismissing the contract claim for lack of jurisdiction. The appellate court declared, succinctly, that "a decree entered upon consent is a judicial act and is not a contract." *Id.* (citing *United States v. Swift & Co.*, 286 U.S. 106, 115 (1932). In *Swift*, the issue was the modification of a consent decree that the federal government had reached with various meatpackers enjoining certain combinations and practices in restraint of trade and commerce. A modification of its terms entered 11 years after entry of the original consent decree was challenged by various intervening grocers' associations as, in part, a breach

---

[4] The Court notes Plaintiff's candor in this respect and commends its adherence to the highest standards of requisite professional conduct.

of contract. The Court held, "We reject the argument for the intervenors that a decree entered upon consent is to be treated as a contract and not as a judicial act." The Court observed that the intervenors were not parties to the consent decree in the first place and added, significantly for purposes of the issue in this matter, "in truth what was then adjudged was not a contract as to any one."

The Federal Circuit affirmance in *Blodgett,* albeit in an unpublished and nonprecedential decision, and the Supreme Court precedent in *Swift* stand squarely at odds with the 9th Circuit's holding in *Angle*. Based on the guidance of these opinions, this Court holds that it does not have jurisdiction to entertain an action for breach of contract if the contract alleged is a settlement agreement that has been incorporated in a consent decree entered by another court or administrative entity.

Accordingly, the remaining pertinent inquiry is whether the settlement agreement as incorporated into the Final Order of the EEOC Administrative Law Judge meets the criteria of a consent decree.

  B. Elements of a Consent Decree

   1. Court-ordered Change in Legal Relationship of the Parties

As noted above, the First Circuit in *Aronov* identified three elements that distinguish consent decrees. The first element, a court-ordered change in the legal relationship of the parties, is virtually conceded by Plaintiff. "[T]he Stipulation arguably satisfies the first factor of a consent decree under *Buchanan* [sic] . . ." Pl.'s Mem. at 11. In an explanatory footnote, Plaintiff explains that this factor is merely "arguable" because the Final Order only recites that the parties have "agreed" to the specific terms of the Stipulation Agreement and "the Final Order contains no language specifically '*ordering*' the Postal Service to comply." *Id.* n.3 (emphasis added). Plaintiff's quibble in this respect is not credible inasmuch as the Stipulation Agreement was "attached hereto, made a part hereof, and incorporated herein by reference" in what was styled overtly as a "Final *Order*." (emphasis added).

For the legal relationship between two parties to be altered in the manner prescribed in *Buckhannon*, the court order at issue must "provide[] concrete and irreversible judicial relief." *Select Milk Producers v. Johanns*, 400 F.3d 939, 948 (D.C. Cir. 2005). The relief accorded in *Select Milk*, for example, was a preliminary injunction which provided plaintiffs with "substantial monetary savings." *Id.* In contrast, where an administrative law judge dismisses a case without prejudice and, as a result, "there was nothing . . . analogous to judicial relief," the parties' relationship was not altered; rather, plaintiffs were merely left "where they were before the complaint was filed" and the ALJ's order "was just an administrative housekeeping measure, not a form of relief." *Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12, 16 (D.C. Cir. 2010). Here the terms of the Agreement between Ms. Vandesande and the USPS bound the Service to make significant monetary payments to compensate her for identifiable, specified injuries.[5] It certainly

---

[5] The Agreement required that the Service remunerate Ms. Vandesande for, inter alia, lost base pay, lost overtime, and lost sick and annual leave, as well as additional lump sum payments for interest and to compensate for the tax consequences of these payments. Compl., Ex. B.

cannot be said that Plaintiff was in the same position after the Agreement was reached as she was when the complaint was initiated with the EEOC.  Moreover, the relief was manifestly judicial in nature given that the Agreement was incorporated in the decree of Judge Lehmann.  Accordingly, the Final Order satisfies the first *Buckhannon* factor.

       2.   Judicial Approval of the Relief

The second and third factors for distinguishing settlement agreements enforced through a consent decree from private settlements derive from a footnote in *Buckhannon*.  "Private settlements do not entail the judicial approval and oversight involved in consent decrees." *Buckhannon*, 532 U.S. at 604 n.7.  The 1st Circuit in *Aronov* has elaborated on the second factor as "requiring judicial approval of the relief vis-à-vis the merits of the case."  *Aronov*, 562 F.3d at 90.  For support, the *Aronov* court noted the citation in *Buckhannon* of *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994).

In *Kokkonen*, a state law insurance dispute was removed to U.S. district court on the basis of diversity jurisdiction.  Prior to jury action, the parties reached an oral agreement settling the claims and counterclaims and then executed a Stipulation of Dismissal, which was entered by the court.  The court's Stipulation and Order of Dismissal, dismissing the complaint and cross-complaint with prejudice, included no language preserving jurisdiction over enforcement of the parties' settlement nor did it even reference the settlement agreement.  In a subsequent action by the insurer to enforce the agreement, the federal district court asserted subject matter jurisdiction under its "inherent power."  The Supreme Court reversed, distinguishing an action for enforcement of the settlement agreement, which have been an action at the state level for breach of contract, from a reopening of the original insurance dispute.  "Enforcement of the settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378.  There was no basis for ancillary jurisdiction because, as the Court noted, the facts of the original dispute and those of the claimed breach of the settlement agreement were different and that "the only order here was that the suit be dismissed." *Id.* at 380.  The Court further observed,

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.

*Id.* at 381.

The *Kokkonen* opinion concluded on the facts in that case, "The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."

In neither *Buckhannon* nor *Kokkonen* did the Supreme Court elaborate any further on the "judicial approval" aspect of consent decrees. The parties here disagree whether Judge Lehmann's Final Order demonstrated such approval sufficient to satisfy this factor.

The 1st Circuit in *Aronov*, however, further refined the test. It declared, "Court approval of a consent decree must involve some appraisal of the merits. . . . A court entering a consent decree must examine its terms to be sure they are fair and not unlawful." *Aronov*, 562 F.3d at 91 (citing *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 279, 280 (4th Cir. 2002). Plaintiff (and the *Aronov* opinion) also cites the 7th Circuit's observation that "[m]ere involvement in the settlement, however, is not enough. There must be some official judicial approval of the settlement . . . ." *T. D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003).

Accordingly, Plaintiff argues that the Final Order "did not anywhere analyze, address, or otherwise comment upon the terms of the Stipulation as it pertained to the merits of Plaintiff's discrimination and retaliation claims." Pl.'s Resp. at 11-12. Because there was no judicial examination of the details of the terms of the Agreement, no analysis of the terms vis-à-vis the merits of the case, and no analysis whether the terms were fair or lawful, judicial "approval" of the Agreement was lacking and the Final Order cannot be considered a consent decree under the factors set out in *Buckhannon*. *Id.* at 12. "All that the ALJ did was reference the Stipulation and acknowledge that the parties had agreed to abide by and comply with its terms." *Id.*

Defendant notes that, "[t]o the contrary, the Administrative Judge did much more than reference and acknowledge the Stipulation. She issued a Final Order summarizing her findings in the case and specifically making the Stipulation part of her Final Order." Def.'s Reply at 7. Defendant argues that the explicit reference to and incorporation of the settlement agreement in the Final Order demonstrates approval "in the context of the merits of the case."

Defendant has the better of the argument. The Final Order here was much more than the mere stipulated dismissal in *Kokkonen* or the one-sentence order of remand in *Aronov*. In the three pages of the Final Order, Judge Lehmann first noted that, in view of her preliminary finding of discrimination and retaliation against Ms. Vandesande by the Postal Service, the parties had "agreed to resolve this matter in its entirety by entering into a Stipulated [sic] Agreement regarding the amount of damages due and owing to Complainant as a result of the finding of discrimination." Compl. Ex. C at 1. The Order then recited in some detail the issues that Judge Lehmann had heard in her consolidated hearing on liability. *Id.* at 1-2. It noted the number of exhibits that the parties had entered into the record and made findings on the record of discrimination against Plaintiff both during and after her pregnancy. *Id.* at 2. Finally, the Order not only reiterated that the parties had agreed to abide by the specific terms of the Stipulation Agreement, but also, more significantly, pursuant to the Agreement itself as a condition of its effectiveness, "attached hereto, made a part hereof, and incorporated herein by reference" the entire Stipulation Agreement. *Id.* at 3. In none of the cases cited by Plaintiff on this question of "judicial approval" was any settlement agreement incorporated in a judgment or order of the court. Indeed, in *Kokkonen*, the Supreme Court specifically noted that "the situation would have been different" had the terms of the settlement there been incorporated in the district court's order. *Kokkonen*, 511 U.S. at 381.

As a further matter, in *Smyth*, the 4th Circuit observed, "Where a settlement agreement is embodied in a court order such that the obligation to comply with its terms is court-ordered, the court's approval and the attendant judicial oversight (in the form of continuing jurisdiction to enforce the agreement) may be equally apparent." *Smyth*, 282 F.3d at 281.[6]

In *Smyth*, the court recognized that the Supreme Court's guidance in *Buckhannon* on the elements of a consent decree did not require that such a judicial action be labeled with the precise words, "consent decree." Similarly, judicial approval of the terms of a settlement agreement may be construed in the context of a court's action. Here, judicial approval – of the fairness and lawfulness – of the Stipulation Agreement is more than sufficiently inferred not only by the Agreement's incorporation in its entirety in the Final Order but also by its incorporation with detailed recitation of the issues before the administrative law judge and her specific findings of liability.

   3.   Judicial Oversight

The final factor distinguishing consent decrees is that of judicial oversight. In *Aronov*, the court noted that "an obligation to comply and the provision of judicial oversight to enforce that obligation are the sine qua non for a consent decree." *Aronov*, 562 F.3d at 91. Citing to *Smyth*, 282 F.3d at 280, *Aronov* explained, "The parties to a consent decree expect and achieve a continuing basis of jurisdiction to enforce the terms of the resolution of their case in the court entering the order." *Aronov*, 562 F.3d at 91. The 1st Circuit further explained, "while a consent decree begins as a settlement, it is one that 'includes an injunction, or some other form of specific relief,' which may ultimately be enforceable by contempt." *Id.* (citing Charles A. Wright & Mary Kay Kane, *Law of Federal Courts* 98, at 702 n.2 (6th ed. 2002).

The Supreme Court explained that a consent decree is "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992).

Plaintiff argues that the Final Order fails to provide for judicial oversight on three grounds: 1) neither the Final Order nor the Stipulation Agreement contained any language that can be construed as including an injunction or other form of specific relief ultimately enforceable by contempt; 2) the Stipulation Agreement recited that it could not be modified except in a writing signed by both parties (contrary to the usual characteristic of consent decrees wherein modification proposed by one party may be obtained from the court but only if that party can overcome the "significant burden" of demonstrating a warranted degree of changed circumstances); and 3) the appellate jurisdiction that the EEOC exercised when Plaintiff previously brought these same claims before that body was exercised pursuant to Code of Federal Regulations ("CFR") provisions pertaining to the appeal of noncompliance with agency settlement agreements, 20 C.F.R. § 1614.504; and that therefore the agency viewed the

---

[6] The *Smyth* court reiterated that point in a follow-on footnote: "[A] district court's incorporation of an agreement's terms or retention of jurisdiction in its order may demonstrate the degree of approval and oversight identified by the Supreme Court in *Buckhannon* as accompanying consent decrees . . ." *Smyth*, 282 F.3d at 282 n.11.

Stipulation as a settlement agreement "without any specific judicial oversight or enforcement authority and contempt power." Pl.'s Resp. at 16.

As an initial matter, this inquiry into the question of judicial oversight is informed, per the Supreme Court in *Rufo*, by "the parties['] desire and expect[ation]" regarding enforceability. By its own terms, the Stipulation Agreement was not to become effective except upon the issuance of the Final Order and it was required to be "attached to and made a part of the Final Order." Compl. Ex. B at 1. This Court can reasonably infer that the reason for requiring the incorporation of the Agreement into the law judge's Final Order was to provide a judicial imprimatur over the terms of the Agreement and to enable the Agreement to be enforced through the judicial processes of the EEOC.[7] By making an agreement part of its order, a court "retains some responsibility over the terms of a settlement agreement." *Roverson v. Giuliani*, 346 F.3d 75, 82 (2nd Cir. 2002). "[T]he continuing jurisdiction involved in the court's inherent power to protect and effectuate its decrees entails judicial oversight of the agreement." *Smyth*, 282 F.3d at 282.

Furthermore, as Defendant points out, the Stipulation Agreement did in fact provide an explicit provision for EEOC enforcement. Paragraph 14 of the Agreement prescribed that any dispute over the amount of the tax liability consequences "will be appealed directly to the EEOC by either party. The EEOC shall apply the tax consequences requirements imposed in this Stipulation Agreement." Compl. Ex. B at 7. The tax consequences dispute is the central provision at issue in this case and it cannot be gainsaid that EEOC enforcement authority in this regard constitutes judicial oversight. Although unsuccessful, Plaintiff's two actions before the EEOC asserting non-compliance with the Stipulation Agreement persuasively demonstrate that the EEOC did exercise, and had authority to exercise, judicial oversight.

Plaintiff's argument regarding the modification characteristic of consent decrees is also unconvincing. The *Aronov* court noted the role of courts in modifying consent decrees, while Paragraph 26 of the Stipulation Agreement here provides that modification of its terms may not be had except by the mutual agreement of the parties in writing. "This Stipulation Agreement may not be modified except by a writing signed by both parties." Compl. Ex. B at 9. According to Plaintiff, by excluding the EEOC judge from any role in modifying the Agreement, the Agreement is contrary to what Plaintiff describes as a signal aspect of consent decrees. It is not evident, however, to this Court whether Judge Lehmann would have felt constrained from entertaining a subsequent proposal to modify her own Final Order, incorporating both the form and the terms of the Stipulation Agreement, had such a matter come before her and the circumstances warranted. Nevertheless, the context of the discussion in *Aronov* regarding modification was merely illustrative. First, while *Aronov* described the "obligation to comply and the provision of judicial oversight to enforce" as the "sine qua non" of consent decrees, it described a court's role in modifying consent decrees merely as "characteristic." The difference in language suggests that the former elements are required, while the latter aspect is simply

---

[7] It is undisputed that a central purpose of consent decrees is to provide "an efficient mechanism for enforcement of settlement agreements." *Consent Decrees: Practical Problems and Legal Dilemmas*, 1987 U. Chi. Legal F. 327, 334. Similarly, the Supreme Court, in *Local No. 93*, noted favorably a point raised in an amicus brief of the efficiency of "channel[ing] litigation concerning the validity and implications of a consent decree into a single-forum – the court that entered the decree – thus avoiding the waste of resources and the risk of inconsistent or conflicting obligations." *Local No. 93*, 478 U.S. at 524 n.13.

exemplary.  Furthermore, what is "characteristic" is that a party seeking to modify a consent decree, presumably *contrary* to the wishes of the other party, must meet a "significant burden" of demonstrating to the court changed circumstances justifying modification.  There is no indication in *Aronov* that an agreement's reservation to the parties to modify its terms by mutual consent is fatal to the determination of a consent decree.

Finally, Plaintiff points out that the provision of the CFR under which the EEOC heard Plaintiff's complaint that the Postal Service had breached the Agreement, 20 C.F.R. § 1614.504, entitled "Compliance with settlement agreements and final action," relates to settlement agreements.  Plaintiff concludes, therefore, "The EEOC thus at all times viewed the Stipulation as a settlement agreement for the parties to abide by and comply with without any specific judicial oversight or enforcement authority or contempt power."  It does not necessarily follow, however, that the Stipulation Agreement did not, by virtue of its incorporation into the Final Order, become a consent decree.  As the *Aronov* court noted, "a consent decree begins as a settlement . . ."  *Aronov*, 562 F.3d at 91.

### IV.  Conclusion

This Court finds, therefore, that the Stipulation Agreement, incorporated as it was in the Final Order of the EEOC administrative law judge, cannot stand at the same time as both a private contract and a consent decree.  What began as an effort of the parties to reach settlement on damages was by their own terms only effective upon incorporation in the Final Order of the court.  The Final Order meets all of the requisites of a judicial consent decree of the EEOC.  As such, Plaintiff has failed to state a claim for breach of contract[8] and Defendant's motion to dismiss is hereby GRANTED.

The Clerk of Court is hereby directed to dismiss Plaintiff's claim with prejudice.

                                                           s/ Edward J. Damich  
                                                           EDWARD J. DAMICH  
                                                           Judge

---

[8] Because the Court finds it lacks jurisdiction over Plaintiff's claim, it is not necessary to address Defendant's assertions of *res judicata* and collateral estoppel.