# In the United States Court of Federal Claims

No. 09-258C
Filed: February 24, 2017
NOT FOR PUBLICATION

| | |
|---|---|
| GLADYS S. VANDESANDE, | ) |
| | ) |
| Plaintiff, | ) Rule 56; Summary Judgment; Breach of |
| | ) Contract; Res Judicata. |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

*Roderick V. Hannah*, Attorney of Record, Roderick V. Hannah, Esq. P.A., Plantation, FL, for plaintiff.

*Douglas T. Hoffman*, Trial Attorney, *Allison Kidd-Miller*, Assistant Director*, Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.     INTRODUCTION

Plaintiff, Gladys S. VanDesande, a former letter carrier with the United States Postal Service ("USPS"), brings this breach of contract action against the United States seeking to recover certain monetary damages, interest and attorney's fees pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1).  *See generally* Compl.  Specifically, plaintiff alleges in this action that the USPS materially breached a Stipulation Agreement Regarding Damages (the "Stipulation Agreement") that she entered into with the USPS to resolve certain employment discrimination and retaliation claims.

The parties have filed cross-motions for summary judgment on liability on the issue of whether the USPS breached the Stipulation Agreement.  In this regard, plaintiff argues in her motion that the government breached the Stipulation Agreement by: (1) failing to reinstate her

with pay and later terminating plaintiff's employment, in violation of paragraphs 1, 2, 12 and 21 of the Stipulation Agreement; (2) failing to make certain payments to address the tax consequences of lump sum and other pay payments required under the agreement (the "Tax Consequences Payments"), pursuant to paragraph 14 of the Stipulation Agreement; and (3) failing to calculate and pay the correct amount of interest due to plaintiff, pursuant to paragraph 8 the Stipulation Agreement.  Compl. at ¶¶ 10(b)-10(d), 16, Ex. B at ¶¶ 1-2, 8, 14, 21, 28; Pl. Br. at 6, 8.

The government has also moved for summary judgment on liability and argues that the USPS has not breached the Stipulation Agreement because: (1) plaintiff's claims are barred by the doctrine of res judicata; (2) plaintiff did not submit the required accountant-prepared tax consequences calculations needed in order to receive the Tax Consequences Payments; (3) the government did not have an obligation to reinstate plaintiff with pay under the terms of the Stipulation Agreement; (4) the USPS correctly calculated and paid all interest due under the Stipulation Agreement; and (5) plaintiff is not entitled to recover certain IRS-levied interest and penalties, and certain attorney's fees, under the terms of the Stipulation Agreement.  Def. Mot. at 8.

For the reasons discussed below, the Court **DENIES** plaintiff's motion for partial summary judgment on liability and **GRANTS-IN-PART** and **DENIES-IN-PART** the government's motion for summary judgment on liability.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this breach of contract action, plaintiff, Gladys S. VanDesande, seeks to recover certain payments, back pay and other relief that she alleges are owed under the terms of the Stipulation Agreement that she entered into with the USPS in 2003.  *See generally* Compl.

---

[1] The facts in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl. at"); the government's amended answer ("Am. Answer at"); plaintiff's motion for partial summary judgment ("Pl. Mot. at"); plaintiff's brief in support of its motion for partial summary judgment ("Pl. Br. at"); the government's motion for summary judgment ("Def. Mot. at"); plaintiff's memorandum in response to the government's motion for summary judgment ("Pl. Mem. at"); and the government's reply in support of its motion for summary judgment ("Def. Reply at").  Unless otherwise noted, the facts recited herein are undisputed.

Specifically, plaintiff alleges that the USPS materially breached the Stipulation Agreement by, among other things, failing to reinstate her and make certain Tax Consequences Payments. Compl. at ¶¶ 10(b)-10(d), 16, Ex. B at ¶¶ 1-2, 8, 14, 21, 28; Pl. Br. at 6, 8.  As relief, plaintiff seeks to recover monetary damages and certain interest and fees from the government.  Compl. at Prayer for Relief.

### 1.  Plaintiff's Discrimination Claims

The facts regarding plaintiff's breach of contract claims are generally undisputed. Plaintiff is a former letter carrier with the USPS.  Pl. Mot at ¶ 1.  During 1998 and 1999, the USPS denied plaintiff work and ultimately removed plaintiff from her position as a letter carrier. *See generally* Compl. at Ex. A, C; *see also* Def. Mot. at 2.  Following her removal from the USPS, plaintiff brought employment discrimination claims against the USPS before the Equal Employment Opportunity Commission (the "EEOC").  *Id.*  On January 28, 2003, the EEOC found that the USPS had discriminated and retaliated against plaintiff in violation of the Pregnancy Discrimination Act and Title VII of the Civil Rights Act of 1964.  Compl. at Ex. A, C; Def. Mot. at 2; Pl. Mot. at ¶ 1; Pl. Br. at 6-7; 42 U.S.C. §§ 2000e(k), 2000e-16.  Before the EEOC could address the issue of damages with respect to plaintiff's employment discrimination claims, plaintiff and the USPS resolved these claims by entering into the Stipulation Agreement on June 18, 2003.  Compl. at Ex. A, B; Am. Answer at ¶¶ 4, 7; Def. Mot at 2; Pl. Mot. at ¶ 1; Pl. Br. at 6- 7.

This Stipulation Agreement provides for, among other things, certain lump sum payments to compensate plaintiff for lost wages and lost sick and annual leave; interest payments; the Tax Consequences Payments; and plaintiff's voluntary resignation from the USPS.  *See generally* Compl. at Ex. B; *see also VanDesande v. United States*, 94 Fed. Cl. 624, 627 (2010).  On June 23, 2003, the EEOC entered a Final Order incorporating the Stipulation Agreement. Compl. at ¶ 8, Ex. C.

Plaintiff did not return to work as a letter carrier after June 23, 2003, and she was placed on "unpaid, non-duty status."  Pl. Br. at 10; *see also* Def. Mot. at 3.  The EEOC issued a Notice of Final Action that adopted and implemented the Stipulation Agreement on August 6, 2003. Compl. at Ex. D.

Pursuant to the terms of the Stipulation Agreement, the USPS made approximately

$560,000 in "lump sum back pay, damages and interest payments" to plaintiff in 2003 and 2004. Pl. Br. at 7; Def. Mot. at 3-4, App. to Def. Mot. at DA48; Am. Answer at ¶ 10; Compl. at ¶ 10; Pl. Mot. at Ex. A  at  ¶¶ 10, 15.  These payments include a lump sum payment of $115,000 for plaintiff's agreement to voluntarily resign from the USPS.  Def. Mot. at 3-4; Compl. at ¶ 10; Pl. Mot. at Ex. A at ¶ 15.

On April 27, 2006, plaintiff obtained a tax consequences calculation from her certified public accountant to determine the amount of her Tax Consequences Payments.  Pl. Br. at 13-14; Pl. Mot. at Ex. 5, Ex. A at ¶ 12; Def. Mot. at 5-6; Def. Reply at 8.  The USPS subsequently received this calculation.  *Id*.

In July and November of 2006, respectively, plaintiff filed her 2003 and 2004 taxes with the Internal Revenue Service.  App. to Def. Mot. at DA123-25, DA127-28.  To date, the USPS has not paid plaintiff for the tax consequences resulting from the lump sum payments that she received in 2003 and 2004.  Pl. Br. at 14-16; Compl. at Ex. A at ¶¶ 14-16; Def Mot. at 17; Def. Reply at 11-12.

## 2.   The Stipulation Agreement

There are several provisions in the Stipulation Agreement that are relevant to plaintiff's breach of contract claims.

First, with respect to plaintiff's claim that the USPS breached the Stipulation Agreement by failing to reinstate her with pay, paragraph 1 of the Stipulation Agreement provides, in relevant part, that:

> The Agency hereby rescinds the Notice of Removal, dated February 3, 1999, issued to the Complainant, Gladys S. VanDesande, which notice shall be deemed null and void.  The Agency shall remove . . . the Notice of Removal, dated February 3, 1999, issued to the Complainant, and all related records, from all of the Complainant's records and files . . . The Notice of Removal, dated February 3, 1999, shall not be cited by the Agency in any manner, in any other case . . . involving the Complainant . . .

Compl. at Ex. B at ¶ 1.  Similarly, paragraph 2 of the Stipulation Agreement also provides, in relevant part, that:

> The Agency hereby rescinds the Notice of Removal, dated
> December 21, 1999, issued to the Complainant, Gladys S.
> VanDesande, which notice shall be deemed null and void.  The
> Agency shall remove . . . the Notice of Removal, dated December
> 21, 1999, issued to the Complainant, and all related records, from
> all of the Complainant's records and files . . . The Notice of
> Removal, dated December 21, 1999, shall not be cited by the
> Agency in any manner, in any other case . . . involving the
> Complainant . . .

Compl. at Ex. B. at ¶ 2.

Paragraph 12 of the Stipulation Agreement, further provides, in relevant part, that:

> The Agency shall credit to the Complainant's pay and leave
> accounts all annual leave and sick leave hours that the Complainant
> would have earned had the Complainant not been denied work and
> discharged from her position with the Agency, beginning
> September 18, 1998 . . . The Agency shall not reduce the total
> credited annual leave or sick leave hours for any maximum
> carryover provisions for past leave years (1998, 1999, 2000, 2001,
> 2002 and 2003) . . . The Agency shall reverse the terminal leave
> payment of 2001 made to Complainant and credit Complainant
> with all hours paid.  Any deductions of leave hours caused by the
> Complainant's use of LWOP time, if any, charged to the
> Complainant after pay period 2003-15-02, until full compliance,
> shall not be deducted from the total accrued leave to be paid by
> virtue of this paragraph and paragraph #13 . . .

Compl. at Ex. B at ¶ 12.  Lastly, paragraph 21, provides, in relevant part, that:

> The Agency shall pay the Complainant a lump sum payment of one
> hundred-fifteen thousand dollars ($115,000.00) to resign from her
> current position as a city letter carrier with the Agency and never
> reapply for employment with the Agency.  The Agency shall only
> deduct federal income tax, social security and medicare deductions.
> No other deductions shall be made from this payment.  The Agency
> shall pay the full lump sum payment of one hundred-fifteen
> thousand dollars ($115,000.00) to the Complainant after January 1,
> 2004, but no later than January 30, 2004.  The Complainant agrees
> to resign from the employment of the Agency only after full
> compliance by the Agency of the terms of this Stipulation
> Agreement, including, but not limited to all back pay and lump sum
> payments required in this Stipulation Agreement.

Compl. at Ex. B at ¶ 21.

Paragraph 14 of the Stipulation Agreement is pertinent to plaintiff's claim that the USPS breached this agreement by failing to make the Tax Consequences Payments.  Specifically, this provision provides, in relevant part, that:

> The Agency shall pay the Complainant a lump sum payment for all tax consequences created by all back pay and lump sum payments required in this Stipulation Agreement; including a lump sum payment to the Complainant to pay for the additional tax consequences created by the lump sum tax consequences payment required in this paragraph.  The Complainant may obtain the assistance of a certified public accountant to prepare the tax liability calculations for the back pay and lump sum payments required by this Stipulation Agreement.

Compl. at Ex. B at ¶ 14.  Paragraph 14 also addresses the time frame within which the USPS must make the Tax Consequences Payments and further provides, in relevant part, that:

> The Agency shall pay the amount of tax liability calculated by the Complainant's accountant, within one hundred and eighty (180) calendar days of service by the Complainant on the Agency's assigned representative (the designated representative as filed with the EEOC on the date of this Stipulation Agreement).  If the Agency fails to pay the amount calculated by the Complainant's accountant within the required 180 calendar day time period, then the Agency shall be in breach of this Stipulation Agreement, and shall be responsible for all costs, legal fees and accountant fees incurred by the Complainant to enforce this provision of the Stipulation Agreement.  The Agency representative will be allowed to review and inspect all records used by the Complainant's accountant . . . The Agency shall pay interest to the Complainant on all sums due for tax consequences, up to the date of receipt, allowing 21 days for mailing, at the Federal Judgment Rate.

Compl. at Ex. B at ¶ 14.  In addition, paragraph 14 describes the process for resolving disputes about the calculation of plaintiff's Tax Consequences Payments and this provision provides, in relevant part, that:

> The Agency may only challenge the Complainant's submission for tax consequences by utilizing the services of another State of Florida licensed certified public accountant, who shall provide a detailed report as to the Agency's calculations of the estimated tax consequences, detailing each disputed amount; and serving such analysis on the Complainant within forty five (45) days of the

Complainant's submission for payment of consequences.  In any disagreement on the tax consequences, the Agency shall be required to make timely payment of the non-disputed portion of the tax consequences payment.  If the Agency disputes the amount of tax consequences submitted by the Complainant, the unpaid disputed amount of the tax liability consequences will be appealed directly to the EEOC by either party.  The EEOC shall apply the tax consequences requirements imposed in this Stipulation Agreement.  The Agency further agrees to pay the Complainant for all reasonable expenses incurred in hiring a Certified Public Accountant to calculate the tax consequences provided for in this Stipulation Agreement.  Such payment for the Complainant's CPA expenses shall be payable in conjunction with the payment for tax consequences.

Compl. at Ex. B at ¶ 14.

Lastly, with respect to plaintiff's claim that the USPS breached the Stipulation Agreement by improperly calculating the interest due under that agreement, paragraph 8 of the Stipulation Agreement provides that:

The Agency shall pay interest at the Federal Judgment rate on all back pay payments and lump sum payments listed in this Stipulation agreement; including those payments required in paragraphs #4, #5, #6 and #7.  Interest shall be calculated using the Federal Judgment Rate in accordance with USPS ELM, 13, June 1998; 436.6; and shall be paid for all back pay and lump sum payments listed in this Stipulation agreement; and shall be paid until the actual date of receipt of the payments; allowing for 21 days after the processing of the payment by the Agency's finance and accounting office for mailing to the Complainant; all of which must occur within 180 days of the date of this Stipulation Agreement.

Compl. at Ex. B at ¶ 8.  In addition, plaintiff's claim to recover attorney's fees in this action is governed by paragraph 28 of the Stipulation Agreement, which provides that:

Failure of the Agency to fully and completely comply with the payment requirements of paragraphs 14, 15, and 21 of this Stipulation Agreement, including not making payments within the required time limits, will result in the Agency paying interest from the date of noncompliance to the date the required payment is made, at the federal judgment rate.  Additionally, the Agency will pay for all expenses, including attorney's fees, for any action taken

to enforce the failure to make full, complete and timely payments
as required in paragraphs 14, 15 and 21, if complainant prevails.

Compl. at Ex. B at ¶ 28.

### 3. Plaintiff's 2005 EEOC Proceeding

During the period 2004 to 2007, plaintiff filed several claims before the USPS and the EEOC alleging, among other things, that the USPS breached the Stipulation Agreement by failing to make the Tax Consequences Payments. Pl. Br. at 14-16; Compl. at ¶ 10; Def. Mot. at 4, App. to Def. Mot. at DA12, DA15, DA18; Pl. Mot. at Ex. A at ¶¶ 10-11, Ex. 3. The USPS and the EEOC denied many of plaintiff's claims upon the basis that plaintiff had not submitted the appropriate tax documentation required to receive the Tax Consequences Payments. App. to Def. Mot. at DA13-DA22, DA52-DA53; Pl. Mot. at Ex. A at ¶ 15, Ex. 4, Ex. 6; Pl. Br. at 13-15, App. to Pl. Br. at A27-A37.

Of particular relevance to this matter, plaintiff filed an EEOC claim alleging that the USPS violated the Stipulation Agreement by failing to pay the Tax Consequences Payments in 2005 (the "2005 EEOC Proceeding"). App. to Pl. Br. at A29; Def. Mot. at 5, App. to Def. Mot. at DA23-DA25, DA75-DA90. On March 30, 2006, the EEOC affirmed the USPS's finding that the agency had complied with the Stipulation Agreement, upon the ground that plaintiff "failed to provide the agency with probative calculations or expert information needed to make payments on her tax consequences." App. to Pl. Br. at A34-A37; Def. Mot. at 5.

The parties do not dispute that the issues and parties involved in the 2005 EEOC Proceeding are the same issues and parties that are involved in this litigation. Def. Mot. at 14; Pl. Br. at 35-38. The parties also agree that plaintiff's Tax Consequences Payments claim was actually litigated before the EEOC and that, during the 2005 EEOC Proceeding, the determination of the Tax Consequences Payments issue was necessary to the resulting EEOC judgment denying plaintiff's claim. Def. Mot. at 13; Pl. Br. at 35-38.

In addition, it is undisputed that the 2005 EEOC Proceeding proceeded to final judgment upon the merits and that plaintiff's claims in this case are based upon the same transactional set of facts that were at issue in the 2005 EEOC Proceeding. Def. Mot. at 14-15; Pl. Br. at 35-38. It is also undisputed that during the 2005 EEOC Proceeding, plaintiff: (1) was not represented by counsel; (2) did not conduct an examination or cross examination of any witnesses; and (3) did

not introduce evidence or exhibits.  Pl. Mem. at 20; *see also* Def. Reply at 4.  There is also no dispute between the parties that there was no trial or final hearing upon the merits of plaintiff's claim that led to findings of facts during the 2005 EEOC Proceeding.  *Id*.

### 4.  Plaintiff's 2007 EEOC Proceeding

On June 13, 2007, the USPS issued a letter stating that plaintiff had been "involuntarily resigned . . . 'effective immediately,' from her employment with the Postal Service."  Pl. Mot. at ¶ 10, Ex. A at ¶ 7; Pl. Br. at 10; Def. Mot. at 6.  Thereafter, plaintiff filed another claim with the EEOC alleging that the USPS's decision to require plaintiff to resign was premature and in violation of the Stipulation Agreement (the "2007 EEOC Proceeding").  Def. Mot. at 6, App. to Def. Mot. at DA91-DA92; App. to Pl. Br. at A29.

On February 5, 2008, the EEOC denied plaintiff's claim.  Pl. Br. at 15, App. to Pl. Br. at, A27-A33, App. to Def. Mot. at DA40-DA45.  In the denial decision, the EEOC found that plaintiff had not shown that the USPS failed to comply with the Stipulation Agreement because, among other things, plaintiff had "not shown that she supplied the required information to enable the agency to calculate the amount due to complainant for the tax consequences incurred in 2004."  App. to Pl. Br. at A31; *see also* Def. Mot. at 6, App. to Def. Mot. at DA40-DA45; Pl. Br. at 15, App. to Pl. Br. at A27-A33.

The parties do not dispute that the issues and parties involved in the 2007 EEOC Proceeding are the same issues and parties involved in this litigation.  Def. Mot. at 14; Pl. Br. at 35-38.  The parties also agree that plaintiff's Tax Consequences Payments claim was actually litigated, or could have been litigated, before the EEOC during the 2007 EEOC Proceeding, and that, during the 2007 EEOC Proceeding, the determination of the Tax Consequences Payments issue was necessary to the resulting EEOC judgment.  Def. Mot. at 13; Pl. Br. at 35-38.

In addition, it is undisputed that the 2007 EEOC Proceeding continued to final judgment upon the merits and that plaintiff's claims in this case are based upon the same transactional set of facts at issue in the 2007 EEOC Proceeding.  Def. Mot. at 14-15; Pl. Br. at 35-38.  It is also undisputed that, during the 2007 EEOC Proceeding, plaintiff: (1) was not represented by counsel; (2) did not conduct the examination or cross examination of any witnesses; and (3) did not introduce evidence or exhibits.  Pl. Mem. at 20; *see also* Def. Reply at 4.  The parties also agree

that there was no trial or final hearing upon the merits of plaintiff's claim that led to findings of facts. *Id*.

### B. Procedural History

Plaintiff commenced this action on April 24, 2009. S*ee generally* Compl. After the government successfully moved to dismiss the complaint for lack of subject-matter jurisdiction, the Court dismissed this case upon the ground that the Stipulation Agreement is a consent decree and, as a result, plaintiff failed to state a plausible claim for breach of contract. *VanDesande v. United States*, 94 Fed. Cl. 624, 636 (2010); Pl. Br. at 17, App. to Pl. Br. at A38-A45; Def. Mot. at 6-7.

Plaintiff appealed the Court's decision to the United States Court of Appeals for the Federal Circuit. Pl. Notice of Appeal, dated October 15, 2010. On August 18, 2010, the Federal Circuit reversed the Court's decision and held that the Stipulation Agreement "is a contract for enforcement purposes." *VanDesande v. United States*, 673 F.3d 1342 (Fed. Cir. 2012). And so, the Federal Circuit remanded the case to the Court on March 3, 2012. *Id.*

Thereafter, the government filed an amended answer on December 2, 2014. *See generally* Am. Answer. The parties also participated in the Court's Alternative Dispute Resolution Program, but were unable to resolve the outstanding issues. Def. Mot. at 7.

On March 18, 2016, the Court entered a Scheduling Order for the briefing of the parties' cross-motions for summary judgment on liability. *See generally* Scheduling Order, dated March 18, 2016. On August 29, 2016, the government filed its motion for summary judgment on the issue of liability. *See generally* Def. Mot. Also on August 29, 2016, plaintiff filed its motion for partial summary judgment on the issue of liability, as well as a brief in support of its motion. *See generally* Pl. Mot.; Pl. Br.

On October 31, 2016, the government filed its response to plaintiff's motion for partial summary judgment on the issue of liability. *See generally* Def. Resp. On October 31, 2016, plaintiff also filed a memorandum of law in response to the government's motion for summary judgment on liability. *See generally* Pl. Mem.

On November 14, 2016, the government filed a reply in support of its motion for summary judgment on liability. *See generally* Def. Reply. On November 14, plaintiff also filed

a reply in support of its partial motion for summary judgment on liability.  *See generally* Pl. Reply.

These matters having been fully briefed, the Court addresses the parties' pending motions.

## III.   LEGAL STANDARDS

### A.  Jurisdiction

The United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act is, however, a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.  Rather, the Tucker Act merely confers jurisdiction upon the Court whenever the substantive right exists.  *United States v. Testan*, 424 U.S. 392, 398 (1976).  And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States.  *Cabral v. United States*, 317 Fed. Appx. 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005)).

In addition, the Tucker Act grants this Court jurisdiction to consider claims based "upon any express or implied contract with the United States."  28 U.S.C. § 1491(a)(1).  The Court does not, however, possess jurisdiction to consider claims against the United States "based on contracts implied in law."  *United States v. Mitchell*, 463 U.S. 206, 218 (1983) (citing *Merritt v. United States*, 267 U.S. 338, 341 (1925)); *Aboo v. United States*, 86 Fed. Cl. 618, 626 (2009), *aff'd*, 347 Fed. Appx. 581 (Fed. Cir. 2009).  And so, to bring a valid contract claim against the

United States in this Court, the underlying contract must be either express or implied-in-fact. *Aboo v. United States*, 86 Fed. Cl. at 626-27.

To establish the existence of either an express or implied-in-fact contract with the United States, a plaintiff must show:  (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon.  *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012).  A government official's actual authority to bind the United States may be express or implied.  *Roy v. United States*, 38 Fed. Cl. 184, 188-89 (1997), *dismissed*, 124 F.3d 224 (Fed. Cir. 1997).  And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents."[2]  *Id.* at 187.  The Federal Circuit has also held "that Tucker Act jurisdiction may be exercised in a suit alleging breach of a Title VII settlement agreement."  *Holmes v. United States*, 657 F.3d 1303, 1312 (Fed. Cir. 2011) ("We do not view Title VII's comprehensive scheme as a bar to the exercise of [Tucker Act] jurisdiction.").

## B.  RCFC 56

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  A fact is "material" if it could "affect the outcome of the suit under the governing law."  *Id.*

---

[2] A government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms."  *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009) *aff'd*, 385 Fed. Appx. 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).  On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees."  *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2006) (citations omitted).  In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority.  *Janowsky v. United States*, 133 F.3d 888, 891–92 (Fed. Cir. 1998).

The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249; *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004); *Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."). The Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### C.   Contract Interpretation

The United States Court of Appeals for the Federal Circuit has held that "[c]ontract interpretation is a question of law." *Barron Bancshares, Inc., v. United States*, 366 F.3d 1360, 1368 (Fed. Cir. 2004); *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985); *Greenhill v. United States*, 92 Fed. Cl. 385, 393 (2010) ("The interpretation of a settlement agreement is a question of law."); *see also Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998) ("A settlement agreement is a contract, and we apply basic contract principles unless precluded by law."). It is also well-established that the Court's interpretation of a contract begins with its "plain language." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). And so, the plain and unambiguous provisions of a

contract "must be given their plain and ordinary meaning and the court may not resort to extrinsic evidence to interpret them.'" *Id.* (citations omitted); *see also Jowett, Inc. v. United States*, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (The Court gives "the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning."); *Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed. Cir. 1992) ("Wherever possible, words of a contract should be given their ordinary and common meaning.") (citations omitted).

The Court also interprets the "provisions of a contract so as to make them consistent" and so as not "to render them ineffective or superfluous.'" *Abraham v. Rockwell Int'l. Corp.*, 326 F.3d 1242, 1251, 1254 (Fed. Cir. 2003); *Fortec Constructors v. United States*, 760 F.2d 1288 (Fed. Cir. 1985) ("This court must be guided by the well accepted and basic principle that an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.").  But, in instances in which "there is a clear conflict between" contract clauses, the Court must "determine which of the conflicting terms controls." *Abraham v. Rockwell Int'l. Corp*, 326 F.3d at 1253-54 (citations omitted).  To do so, the Court must apply the "general rules of interpretation," which require that, "'[w]here specific and general terms in a contract are in conflict, *those which relate to a particular matter control over the more general language.*'" *Id*. at 1254 (citations omitted) (emphasis existing).

The Federal Circuit has also recognized that a contract that is reasonably susceptible to more than one interpretation is ambiguous.  *Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed. Cir. 1992) (citations omitted).  Where a latent ambiguity exists in a contract, "the court will construe the ambiguous term against the drafter of the contract when the nondrafter's interpretation is reasonable," under the general rule of *contra proferentem. Id*. (citations omitted); *see also NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("To show an ambiguity it is not enough that the parties differ in their respective interpretations . . . both interpretations must fall within the zone of reasonableness."); *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004) ("Before a court may enforce the general rule of *contra proferentem* against the drafter of an ambiguity, the contractor's interpretation of that ambiguity must be reasonable.").  But, "an exception to the general rule that requires construing ambiguities against" the drafter exists where "the ambiguities are 'so "patent and glaring" that it is unreasonable for a [party] not to discover and inquire about them.'" *HPI/GSA-3C, LLC v. Perry*, 364 F.3d at 1334 (citations omitted).  "Where an ambiguity is not sufficiently glaring to

trigger the patent ambiguity exception, it is deemed latent and the general rule of *contra proferentem* applies." *Id*. (citations omitted)

### D.  Res Judicata

The Federal Circuit has also recognized that "[t]he doctrine of res judicata involves the related concepts of claim preclusion and issue preclusion." *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1267 (Fed. Cir. 2008).  Claim preclusion bars a claim where: "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.'" *Cunningham v. United States*, 748 F.3d 1172, 1179 (Fed. Cir. 2014) (quoting *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (citations omitted).  Claim preclusion can be "applied to the final judgment of an administrative agency, such as a board of contract appeals, that 'is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *Phillips/May Corp. v. United States*, 524, F.3d at 1268 (citations omitted).  But, claim preclusion is inappropriate where "a court's remedial authority in the first action prevented the plaintiff from seeking the relief sought in the second action." *Cunningham v. United States*, 748 F.3d at 1179.

Collateral estoppel or issue preclusion, requires that: "(1) the issues are identical to those in a prior proceeding, (2) the issues were actually litigated, (3) the determination of the issues was necessary to the resulting judgment, and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *Banner v. United States*, 238 F.3d 1348, 1354 (Fed. Cir. 2001) (citing *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365-66 (Fed. Cir. 2000)). To that end, the Court considers three criteria "[i]n determining whether a party has had a 'full and fair' opportunity to litigate an issue . . . (1) whether there were significant procedural limitations in the prior proceeding, (2) whether the party had an incentive to litigate fully the issue, and (3) whether effective litigation was limited by the nature or relationship of the parties." *Id*.

Lastly, the doctrine of judicial estoppel is applied to estop a party that has "successfully urge[d] a particular position in a legal proceeding . . . from taking a contrary position in a

subsequent proceeding where its interests have changed." *Buckley v. United States*, 57 Fed. Cl. 328, 341 (2003) (citations omitted). Judicial estoppel is "designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants." *Id*. And so, the Federal Circuit has identified three factors that should be considered when determining whether judicial estoppel is appropriate to bar a claim: "(1) whether the 'party's later position [is] "clearly inconsistent" with its earlier position'; (2) 'whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled"'; and (3) 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *In re North Am. Rubber Thread Co., v. United States*, 593 F.3d 1346, 1354 (Fed Cir. 2010) (citations omitted).

## IV.    LEGAL ANALYSIS

The parties have filed cross-motions for summary judgment on the question of whether the government is liable to plaintiff for several alleged material breaches of the Stipulation Agreement. In this regard, plaintiff argues that she is entitled to judgment in her favor as a matter of law because: (1) the government breached paragraphs 1, 2, 12, and 21 of the Stipulation Agreement by failing to reinstate plaintiff with pay to her position as a letter carrier after the parties entered into the Stipulation Agreement, and by terminating plaintiff's employment in June 2007; (2) the government breached paragraph 14 of the Stipulation Agreement by failing to make the Tax Consequences Payments; and (3) the government breached paragraph 8 of the Stipulation Agreement by failing to calculate and pay the correct amount of interest due on certain lump sum payments made under the Stipulation Agreement. Pl. Br. at 19-35.

In its cross-motion, the government argues that it is not liable to plaintiff for five reasons. First, the government argues that plaintiff's claims are barred by the doctrine of res judicata. Def. Mot. at 9-16. Second, the government argues that it has not breached paragraph 14 of the Stipulation Agreement, because plaintiff did not submit an accountant-prepared calculation of her tax consequences in order to receive the Tax Consequences Payments. *Id*. at 16-24. Third, the government argues that plaintiff is not entitled to be reinstated with pay under the terms of the Stipulation Agreement, and that any breach of that agreement was partial and, thus, does not

relieve plaintiff of her obligation to voluntarily resign. *Id*. at 24-26. In addition, the government argues that it has correctly calculated and paid the quantum interest due to plaintiff under the Stipulation Agreement. *Id*. at 26-29. Lastly, the government argues that plaintiff is not entitled to recover any IRS-levied interest or penalties in this action because, plaintiff failed to mitigate her damages and that plaintiff's attorney's fees are limited by the terms of the Stipulation Agreement. *Id*. at 29-32.

For the reasons discussed below, the Court **DENIES** plaintiff's motion for partial summary judgment on liability and **GRANTS-IN-PART AND DENIES IN-PART** the government's motion for summary judgment on liability.

### 1. Plaintiff's Claims Are Not Precluded By The Doctrine Of Res Judicata

As an initial matter, the Court is not persuaded by the government's arguments that this matter is precluded by the doctrine of res judicata. In this regard, the government puts forward two arguments to demonstrate why plaintiff cannot pursue her claims in this litigation. First, the government argues that plaintiff's claim to recover the Tax Consequences Payments is barred by issue preclusion because plaintiff previously litigated this claim before the EEOC. Def. Mot. at 9-16. In addition, the government argues that plaintiff's remaining breach of contract claims are barred by claim preclusion due to plaintiff's prior litigation before the EEOC. *Id*. For the reasons discussed below, the Court disagrees.

First, the undisputed material facts in this matter demonstrate that plaintiff's claim to recover the Tax Consequences Payments is not barred by issue preclusion, because plaintiff did not have a full and fair opportunity to litigate this claim before the EEOC. It is well-established that for issue preclusion to bar plaintiff's Tax Consequences Payments claim the government must establish four factors: (1) the issue presented here must be identical to that in a prior proceeding; (2) that issue must have been actually litigated; (3) the determination of the issue must have been necessary to the resulting judgment; and (4) plaintiff must have had a full and fair opportunity to litigate the issue. *Banner v. United States*, 238 F.3d at 1354 (citations omitted). With respect to the question of whether plaintiff has had a full and fair opportunity to litigate her claim before the EEOC, the Court must also consider three additional criteria, namely: (1) whether there were significant procedural limitations in the prior proceeding; (2)

whether plaintiff had an incentive to litigate fully the issue; and (3) whether effective litigation was limited by the nature or relationship of the parties. *Id*.

The undisputed material facts in this case do not show that plaintiff had a full and fair opportunity to litigate her claim before the EEOC. Rather, these facts show that important procedural safeguards that would have aided plaintiff in the 2005 and 2007 EEOC Proceedings were not present in those proceedings. Specifically, the government does not dispute that plaintiff was not represented by counsel during these proceedings and that plaintiff did not introduce documentary evidence or examine any witnesses during the 2005 and 2007 EEOC Proceedings. Pl. Mem. at 20; *see also* Def. Reply at 4. It is also undisputed that the EEOC did not conduct a trial or final hearing upon the merits of plaintiff's claim that led to any findings of fact. Pl. Mem. at 20; Def. Reply at 4. Given this, there can be no genuine dispute that plaintiff encountered significant procedural limitations in pursuing her Tax Consequences Payments claim before the EEOC.

The fact that plaintiff could have retained counsel, or presented documentary and witness evidence during the 2005 and 2007 EEOC Proceedings does not overcome the Court's concern that plaintiff did not, in fact, do so during those proceedings. And so, application of issue preclusion to bar plaintiff's Tax Consequences Payments claim is not appropriate under the circumstances presented here.

Because there is no dispute that the EEOC could not award the monetary damages that plaintiff seeks in this litigation, the government has also not demonstrated that plaintiff's remaining claims are barred by claim preclusion. In this regard, the government argues that plaintiff's claims seeking reinstatement, back pay and certain interest and fees are subject to claim preclusion, because these claims have been, or could have been, raised during the 2005 and 2007 EEOC Proceedings. Def. Mot. at 13-16. It is well-established that claim preclusion would bar plaintiff's claims here if: (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment upon the merits; and (3) the second claim is based upon the same set of transactional facts as the first. *Cunningham v. United States*, 748 F.3d at 1179 (quoting *Ammex, Inc. v. United States*, 334 F.3d at 1055); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. at 398. But, the Court may decline to bar plaintiff's claims under a theory of claim preclusion if

the EEOC's remedial authority prevented the plaintiff from seeking the relief that she seeks in this litigation. *Cunningham v. United States*, 748 F.3d at 1179.

In this case, the EEOC's regulations make clear that the commission lacks the authority to award the monetary damages that plaintiff seeks in this litigation. *See* 29 C.F.R. § 1614.504(a) ("The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complainant be reinstated for further processing from the point processing ceased."). These regulations provide that the EEOC may either enforce the Stipulation Agreement or reinstate plaintiff to her position with the USPS. But, plaintiff seeks monetary damages for several alleged breaches of the Stipulation Agreement in this litigation. Because the EEOC does not possess the authority to award plaintiff the monetary damages that she seeks, the Court declines to apply claim preclusion to plaintiff's claims.[3] *See Cunningham v. United States*, 748 F.3d at 1179.

### 2. Plaintiff's Tax Consequences Payments Claim Is Not Ripe For Disposition Under RCFC 56

While plaintiff may pursue her Tax Consequences Payments claim in this litigation, the undisputed material facts, nonetheless, show that this claim is not ripe for disposition under RCFC 56. In this regard, the parties have filed cross-motions for summary judgment upon the issue of whether the USPS breached paragraph 14 of the Stipulation Agreement by failing to make the Tax Consequences Payments. Material facts remain in dispute, however, regarding whether plaintiff provided an accountant-prepared calculation of her tax consequences to the appropriate official within the USPS and, if so, whether the USPS followed the dispute resolution procedure set forth in the Stipulation Agreement to challenge plaintiff's tax consequences calculation. And so, for the reasons discussed below, the Court denies the parties' cross-motions for summary judgment on this issue.

---

[3] Plaintiff's Tax Consequences Payments claim is also not precluded by the doctrine of judicial estoppel. When determining whether judicial estoppel is appropriate to bar a claim, the Court considers, among other things, whether plaintiff has successfully persuaded a court to accept an earlier position such that judicial acceptance of an inconsistent position would suggest that one of the courts has been misled. *In re North Am. Rubber Thread Co., v. United States*, 593 F.3d at 1354 (citations omitted). There is no dispute that plaintiff did not prevail upon her Tax Consequences Payments claim the before the EEOC. Pl. Br. at 39; Def. Mot. at 5-6. And so, this claim is not barred under the doctrine of judicial estoppel.

### a.    Plaintiff Has Not Waived Her
### Tax Consequences Payments Claim

As a preliminary matter, plaintiff has not waived her right to bring the Tax Consequences Payments claim.  Plaintiff would waive this claim if there is evidence of a voluntary and intentional relinquishment of her right to receive the Tax Consequences Payments.  *Cherokee Nation v. United States*, 355 F.2d 945, 950 (1966) (citations omitted).  Such a "'[w]aiver requires, (1) the existence at the time of the waiver of a right, privilege, advantage or benefit that may be waived; (2) the actual or constructive knowledge therefor; and (3) an intention to relinquish such right, privilege, advantage or benefit.'"  *Youngdale & Sons Constr. Co.  v. United States*, 22 Cl. Ct. 345, 347 (1991) (quoting *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982).

Although the government argues that plaintiff waived her Tax Consequences Payments claim by failing to initially retain an accountant to calculate her tax consequences, the undisputed material facts in this case show that plaintiff has repeatedly and consistently maintained−in this litigation and before the EEOC−that she had no obligation to retain an accountant to calculate her tax consequences.  Pl. Brief at 41; *Gladys S. VanDesande,* EEOC Decision No. 01A2449, 2006 WL 902503 at *2 (2006).  Given this, the factual record does not show that plaintiff intended to relinquish her right to bring this claim in this litigation.  And so, the Court concludes that plaintiff has not waived the Tax Consequences Payments claim.

### b.    The Government Is Not Obligated To
### Pay The Tax Consequences Payments Unless
### Plaintiff Provides An Accountant-Prepared Calculation

Although plaintiff has not waived her Tax Consequences Payments claim, a plain reading of the Stipulation Agreement demonstrates that the government is not obligated to make the Tax Consequences Payments unless plaintiff provides the USPS with a calculation of her tax consequences that has been prepared by an accountant.  Compl. at Ex. B. at ¶ 14.  In this regard, paragraph 14 of the Stipulation Agreement provides that plaintiff "may obtain the assistance of a certified public accountant" to prepare her tax consequences calculations.  *Id*.  And so, as

plaintiff correctly argues in her motion that the Stipulation Agreement does not require that she retain an accountant to calculate her tax consequences.[4]

But, the Stipulation Agreement does clearly require that plaintiff provide tax consequences calculations that have been prepared by an accountant in order to *obligate* the government to make the Tax Consequences Payments. Specifically, paragraph 14 of the Stipulation Agreement provides that, "[t]he agency shall pay the *amount of tax liability calculated by the [plaintiff's] accountant . . . ." Id.* (emphasis supplied). This provision also provides that, "[i]f the [government] fails to pay *the amount calculated by the [plaintiff's] accountant* within the required 180 calendar day time period, then the [government] shall be in breach of this Stipulation Agreement . . . ." *Id.* (emphasis supplied). And so, the plain and unambiguous language in paragraph 14 demonstrates that the government is obligated to pay the amount of plaintiff's tax consequences only if the amount of plaintiff's tax consequences has been calculated by an accountant.

Paragraph 14 also makes clear that, to be in breach of the Stipulation Agreement, the government must fail to "pay the amount calculated by the [plaintiff's] accountant within the required 180 calendar day time period" after service by the plaintiff on the USPS's assigned representative. *Id.* And so, the Court interprets the Stipulation Agreement to require that plaintiff provide the USPS with tax consequences calculations that have been prepared by her accountant before the government is obligated to pay the Tax Consequences Payments.

### c.    The Government Is Not Obligated
### To Pay Plaintiff's Entire Tax Liability

A plain reading of the Stipulation Agreement also demonstrates that the government is not required to pay plaintiff's entire tax liability due to the lump sum and back pay payments required under the Stipulation Agreement, as plaintiff suggests. *See*, Compl. at Ex. B at ¶ 14. In this regard, paragraph 14 of the Stipulation Agreement provides that the USPS shall pay a lump sum payment for "all tax consequences" created by the lump sum and back pay payments required under the agreement. *Id.* As the parties acknowledge in their cross-motions, the term

---

[4] The Court notes, however, that the Stipulation Agreement provides that the government would pay plaintiff's reasonable expenses to retain an accountant. Compl. at Ex. B at ¶ 14.

"tax consequences" is not defined in the Stipulation Agreement.  Pl. Brief at 28-31; Def. Mot. at 3, n 2.

Nonetheless, the Stipulation Agreement makes clear that the purpose of the lump sum and back pay payments required under that agreement is to resolve the issue of damages with respect to plaintiff's employment discrimination and retaliation claims.  *See* Compl. at Exhibit B at 1.  The agreement also makes clear that the lump sum and back pay payments required under the Stipulation Agreement are intended to compensate plaintiff for lost wages and lost leave that she would have otherwise earned during the course of her employment, but for the government's discriminatory actions.  *Id*. at ¶¶ 4-7, 14.

Generally, the tax consequences of such payments are understood to be the increase in the taxes owed because plaintiff will receive her wages and leave payments in a single, lump sum amount, rather than in periodic payments spread out over a period of time.  *See Humann v. City of Edmonds, et. al.*, 2015 WL 3539569, *2 (W.D. Wash. 2015) ("In general, a plaintiff that is awarded back or front pay in a lump sum suffers adverse tax consequences that she would not have incurred had she been paid over time."); *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 442 (3d Cir. 2009) ("[A]n award to compensate a prevailing employee for her increased tax burden as a result of a lump sum award will, in the appropriate case, help make a victim whole."); Tim Canney, *Tax Gross-Ups: A Practical Guide To Arguing and Calculating Awards for Adverse Tax Consequences In Discrimination Suits*, 59 CATH. U. L. REV. 1111, 1120 (2010) ("[T]he tax consequences of large backpay awards can be particularly harsh on plaintiffs.").  And so, the purpose of an award of such lump sum pay under Title VII is to restore the economic status quo that would have existed but for the wrongful discriminatory act.  *See Crossin v. United States*, 789 F. Supp. 906, 909 (N.D. Ill. 1992).

In this case, plaintiff would have received, and paid taxes on, the wages and leave that she is being compensated for under the Stipulation Agreement during the regular course of her employment, absent the USPS's discriminatory actions.  *See* Def. Mot. at 18.  Given this, relieving plaintiff of *any* tax liability for these payments would not restore the economic status quo.  And so, the Court construes the Stipulation Agreement to require that the government compensate plaintiff for the additional, or increased, tax liability that she incurred in 2003 and

2004, due to the lump sum and back pay payments contemplated under the Stipulation Agreement.

In addition, plaintiff's reliance upon the Stipulation Agreement requirement that the USPS pay the "adverse consequences" of her TSP loan distribution, to show that she may recover her entire tax liability in this litigation, is misplaced.  Pl. Brief at 30-31; Compl. at Ex. B at ¶ 19.  This provision does not specifically address the term "tax consequences which is at issue in this case."  Compl. at Ex. B at ¶ 19.  Plaintiff is on somewhat firmer ground in arguing that the Stipulation Agreement's requirement that the USPS pay her "adverse tax consequences" for having received a terminal leave payment in 2001 shows that the parties would have also used the phrase "adverse tax consequences" in paragraph 14 of the Stipulation Agreement, if they intended to limit plaintiff's tax consequences recovery to her increased tax liability.  Pl. Brief at 30-31.  But, as the government points out in its motion, the terminal leave payment is a one-time payment that would not have the same impact on plaintiff's tax liability as the lump sum payments for lost wages and lost leave.  Def. Resp. at 17-18.  And so, the Court finds plaintiff's reading of the Stipulation Agreement to require the government to pay all of her tax liability with respect to the lump sum payments for lost wages and lost leave to be at odds with the stated purpose of the Stipulation Agreement.

### c.  Material Facts Are In Dispute Regarding Whether The USPS Breached Paragraph 14

In light of the Court's interpretation of the Stipulation Agreement, plaintiff must demonstrate three things to establish that the government breached paragraph 14 of the Stipulation Agreement by failing to make the Tax Consequences Payments: (1) that she provided the USPS with tax consequences calculations that have been prepared by her accountant; (2) that the USPS failed to pay these tax consequences within 180 calendar days of the receiving such calculations; and (3) that the USPS did not challenge plaintiff's tax consequences calculations in the manner required under the Stipulation Agreement.  For the reasons discussed below, material facts remain in dispute regarding, whether plaintiff provided her tax consequences calculations to the appropriate USPS officials and, if so, whether the USPS challenged plaintiff's tax consequences calculations in the manner required under the Stipulation Agreement.  And so, plaintiff has not established that the USPS breached the Stipulation Agreement at this stage in the litigation.

In this regard, the Stipulation Agreement describes the process that the government must utilize to challenge the amount of plaintiff's tax consequences calculations and the agreement provides, in relevant part, that:

> The Agency may only challenge the Complainant's submission for tax consequences by utilizing the services of another State of Florida licensed certified public accountant, who shall provide a detailed report as to the agency's calculations of the estimated tax consequences, detailing each disputed amount; and serving such analysis on the Complainant within forty five (45) days of the Complainant's submission for payment of consequences.  In any disagreement on the tax consequences, the Agency shall be required to make timely payment of the non-disputed portion of the tax consequences payment.  If the Agency disputes the amount of tax consequences submitted by the Complainant, the unpaid disputed amount of the tax liability consequences will be appealed directly to the EEOC by either party.  The EEOC shall apply the tax consequences requirement imposed in this Stipulation Agreement.

Compl. at Ex. B at ¶ 14.  While it is undisputed that plaintiff obtained tax consequences calculations from her accountant in 2006, neither party has put forward sufficient facts for the Court to determine whether the proper officials within the USPS received these calculations and, if so, what happened afterwards.  Pl. Brief at 12, 32; Def. Mot. at 5-6, 21; Def. Resp. at 15.

If the appropriate official within the USPS did receive plaintiff's accountant-prepared tax consequences calculation, the Stipulation Agreement requires that the government either make the Tax Consequences Payments within 180 days, or retain its own accountant and challenge any amount of the Tax Consequences Payments that is in dispute before the EEOC.  Compl. at Ex. B at ¶ 14.  The material facts regarding whether this dispute resolution process was followed here are not contained in the factual record currently before the Court.  And so, the Court cannot determine whether the government breached its obligation under paragraph 14 of the Stipulation Agreement.

The Court is also unpersuaded by the government's arguments that the USPS has been relieved of the obligation to pay plaintiff's tax consequences because plaintiff initially failed to provide the USPS with tax amounts that were calculated by her accountant and because plaintiff failed to supply the "USPS with a consistent amount of tax consequences".  Def. Mot. at 21-22;

Def. Reply at 11-12.  The Court does not read paragraph 14 of the Stipulation Agreement to relieve the USPS of its obligation to either pay, or challenge, the amount of plaintiff's tax consequences simply because plaintiff belatedly provided the USPS with her accountant-prepared tax consequences calculations.

Indeed, the government points to no language in the Stipulation Agreement that would extinguish the USPS's obligation to pay the Tax Consequences Payments under these circumstances.  Def. Mot. at 21-22; Def. Reply at 11.  Nor does the government identify any language in the Stipulation Agreement that would relieve the USPS of its obligation to honor the Tax Consequences Payments after a certain period of time has elapsed.  And so, the current factual record before the Court simply does not establish whether the government has breached the Stipulation Agreement by failing to pay plaintiff's Tax Consequences Payments.

### 3.  The USPS's Did Not Breach The Stipulation Agreement By Declining To Reinstate Plaintiff With Pay

The factual record before the Court also demonstrates that the USPS did not breach the Stipulation Agreement by declining to reinstate plaintiff with pay after the parties entered into that agreement.  In this regard, plaintiff argues that the Stipulation Agreement requires that the USPS reinstate her with pay until the government fully complies with the terms of that agreement.  Pl. Brief at 8-11, 19-27.

The government counters that there is no requirement in the Stipulation Agreement for the USPS to reinstate plaintiff with pay following the settlement of her discrimination claims.  Def. Resp. at 7-13.  Rather, the government argues that the purpose of paragraphs 1 and 2 of the Stipulation Agreement, upon which plaintiff relies to show an obligation to reinstate her with pay, is simply to "provide a clean Federal Employment record, allowing [plaintiff] to resign in lieu of removal."  Def. Resp. at 7.  And so, the government contends that the Stipulation Agreement neither requires, nor addresses, plaintiff's reinstatement.  *See id.*  For the reasons discussed below, the Court agrees.

First, a plain reading of paragraphs 1 and 2 of the Stipulation Agreement demonstrates that these provisions do not require the USPS to reinstate plaintiff with pay.  In this regard, paragraphs 1 and 2 of the Stipulation Agreement provide, in relevant part, that:

> The Agency hereby rescinds the Notice of Removal, dated
> February 3, 1999, issued to the Complainant, Gladys S.
> VanDesande, which notice shall be deemed null and void.  The
> Agency shall remove . . . the Notice of Removal, dated February 3,
> 1999, issued to the Complainant, and all related records, from all of
> the Complainant's records and files . . . The Notice of Removal,
> dated February 3, 1999, shall not be cited by the Agency in any
> manner, in any other case . . . involving the Complainant . . .

Compl. at Ex. B at ¶ 1.  Similarly, paragraph 2 of the Stipulation Agreement provides, in relevant

part, that:

> The Agency hereby rescinds the Notice of Removal, dated
> December 21, 1999, issued to the Complainant, Gladys S.
> VanDesande, which notice shall be deemed null and void.  The
> Agency shall remove . . . the Notice of Removal, dated December
> 21, 1999, issued to the Complainant, and all related records, from
> all of the Complainant's records and files . . . The Notice of
> Removal, dated December 21, 1999, shall not be cited by the
> Agency in any manner, in any other case . . . involving the
> Complainant . . .

Compl. at Ex. B at ¶ 2.  While the aforementioned provisions clearly require that the USPS

rescind the notices of removal placed in plaintiff's personnel file, these provisions do not address

whether plaintiff should be reinstated to her position with pay.  *Id.*  Indeed, it is undisputed that

plaintiff returned to work in a leave without pay status after settling her discrimination claims.  Pl.

Brief at 10; *see also* Pl. Mot. at ¶ 4; Def. Mot. at 24-25.  And so, plaintiff has not established that

the Stipulation Agreement required that the USPS reinstate her with pay.

Plaintiff's contention that the Court's reading of the Stipulation Agreement to not require

reinstatement with pay renders other parts of the agreement superfluous is also without merit.  Pl.

Brief at 23-26.  In this regard, plaintiff points to paragraphs 12 and 13 of the Stipulation

Agreement which address certain sick leave and annual leave credits that the USPS is required to

make to plaintiff's leave accounts to show that the USPS is obligated to reinstate her with pay.  *Id.*

Specifically, plaintiff argues that the Stipulation Agreement's requirement that the USPS credit

certain sick leave hours to plaintiff's leave account shows that the USPS is obligated to reinstate

her with pay, because this sick leave would have no value unless plaintiff had been reinstated with

pay.  *Id.* at 24.  But, as the government explains, plaintiff's credited sick leave remains valuable

even if she has not been reinstated with pay, because this leave could be re-credited to plaintiff upon her return to federal service.  Def. Resp. at 11.

Plaintiff further argues that the Stipulation Agreement's requirement that the USPS make a lump sum payment in the amount of plaintiff's credited annual leave "at [plaintiff's] "current regular pay rate" is also rendered meaningless by the Court's reading of the Stipulation Agreement.  Pl. Brief at 23-24.  But, again, the reference to plaintiff's "current regular pay rate" has no bearing upon plaintiff's entitlement to reinstatement with pay.  Rather, this provision simply clarifies how the USPS should calculate the payment required under paragraph 13 of the Stipulation Agreement.[5]

Indeed, at bottom, the Stipulation Agreement simply does not require, or even address, a requirement to reinstate plaintiff with pay.  And so, the Court declines to infuse this agreement with such a requirement.  *See* Compl. at Ex. B.

### 4.  Material Facts Are In Dispute Regarding  Whether The USPS Breached The Stipulation Agreement By Terminating Plaintiff

Although the Court does not read the Stipulation Agreement to require that the USPS reinstate plaintiff with pay, the Court shares plaintiff's view that she had no obligation to voluntarily resign under the terms of the Stipulation Agreement unless the USPS fully complied with the agreement.  In this regard, paragraph 21 of the Stipulation Agreement provides, in relevant part, that: plaintiff  "agrees to resign from the employment of the Agency only after *full compliance* by the Agency of the terms of this Stipulation Agreement, including, but not limited to all back pay and lump sum agreements required in this Stipulation Agreement."  Compl. at Ex. B. at ¶ 21 (emphasis supplied).  As discussed above, material facts remain in dispute regarding whether the government has in fact fully complied with the terms of the Stipulation Agreement with respect to plaintiff's Tax Consequences Payments claim.  And so, plaintiff has not

---

[5] Plaintiff's reliance upon the Stipulation Agreement's requirement that the USPS not deduct any of her leave hours after February 15,  2003, due to plaintiff's leave without pay status, is also misguided.  This provision is intended to ensure that plaintiff's leave without pay status would not reduce the amount of leave to be credited to her leave account.  Because the Court does not construe the Stipulation Agreement to require that the government reinstate plaintiff with pay, it would appear that if plaintiff's only remedy would be a return to duty in a leave without pay status if she succeeds upon her claim that the USPS breached the Stipulation Agreement by terminating her employment in 2007.

established that she is entitled to judgment in her favor with respect to her claim that the USPS breached the Stipulation Agreement by improperly terminating her in 2007 at this stage in the litigation.

### 5.  The Government Correctly Calculated And Paid Plaintiff's Quantum of Interest

The undisputed material facts do show, however, that the government has correctly calculated and paid plaintiff's quantum of interest under the Stipulation Agreement.  And so, the government is entitled to judgment as a matter of law in its favor on this issue.

In this regard, paragraph 8 of the Stipulation Agreement requires that "[i]nterest shall be calculated using the Federal Judgment Rate in accordance with USPS [Employee and Labor Relations Manual], 13, June 1998; 436.6 . . . ."  Compl. at Ex. B at ¶ 8.  The USPS's Employee and Labor Relations Manual also explains that "the rate of interest is calculated based on the Federal Judgment Rate," which is found in Title 28, United States Code, Section 1961.  USPS ELM 13, June 1998, 436.63 *available at* https://about.usps.com/manuals/elm/elm13.zip; App. to Def. Mot. at DA94-DA95.

In addition, 28 U.S.C. § 1961 provides, in part, that, "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the week preceding the date of judgment."  28 U.S.C. § 1961 (2000).  And so, the Stipulation Agreement requires that the USPS calculate plaintiff's quantum interest from the date of the entry of the judgment on plaintiff's discrimination claims, at a rate equal to the weekly average 1-year constant maturity Treasury yield for the week preceding the date of judgment.

In this case, there is no dispute that the date of the entry of judgment with respect to plaintiff's discrimination claims is June 23, 2003.  Def. Resp. at 19, Pl. Brief at 7.  Plaintiff also does not dispute the government's representation that the rate equal to the weekly average 1-year constant maturity Treasury yield for the week preceding this date of judgment was .95%.  Pl. Mem. at 42-43; Def. Resp. at DA 137.  It is similarly undisputed that the USPS applied the .95% rate to calculate and pay plaintiff's quantum of interest.  Pl. Mem. at 43; Def. Resp. at 19-20.  And so, the USPS has demonstrated that it has properly calculated and paid plaintiff's quantum of interest.

**6.   The Stipulation Agreement Limits Plaintiff's Attorney's Fees**

A plain reading of the Stipulation Agreement also demonstrates that this agreement limits the attorney's fees that plaintiff may recover in this litigation.  Plaintiff's ability to recover attorney's fees is limited by the language contained in paragraph 28 of the Stipulation Agreement, which provides, in relevant part, that "the Agency will pay for all expenses, including attorney's fees, for any action taken to enforce the failure to make full, complete and timely payments as required in paragraphs 14, 15, and 21, if complainant prevails."  Compl. at Ex. B at ¶ 28.  Given this, the aforementioned language makes clear that the government must pay plaintiff's attorney's fees for any action taken to enforce the government's obligation to make the payments required under paragraphs 14, 15, and 21 of the Stipulation Agreement.

In this matter, plaintiff seeks to enforce the government's obligation to make the payments required under paragraph 14 of the Stipulation Agreement and she does not seek to enforce paragraphs 15 and 21 of that agreement.  Pl. Mem. at 44; Def. Mot. at 31-32.  And so, plaintiff's ability to recover attorney's fees in this action is limited by the terms of the Stipulation Agreement to those attorney's fees that are incurred to enforce the USPS's obligation to make the Tax Consequences Payments required under the Stipulation Agreement.

**7.   Plaintiff Is Not Entitled To IRS-Levied Interest
        And Penalties**

As a final matter, the undisputed material facts also show that the government is entitled to summary judgment in its favor on the issue of whether plaintiff may recover certain IRS-levied interest and penalties in this litigation.  In this regard, the Stipulation Agreement makes clear that plaintiff cannot recover the IRS-levied interest and penalties that she has incurred by failing to timely pay her federal income taxes, because the USPS did not make the Tax Consequences Payments.  And so, the government is entitled to judgment in its favor on this issue.

As the government points out in its motion for summary judgment, the Stipulation Agreement, "explicitly provides for interest, and does not levy interest against the Government IRS-levied interest and penalty amounts that accrued based upon [plaintiff's] failure to timely file and pay her taxes."  Def. Mot. at 29.  In this regard, paragraph 28 of the Stipulation Agreement expressly provides that the government's failure to fully and completely comply with

the payment requirements of the Stipulation Agreement "will result in the Agency paying interest from the date of noncompliance to the date the required payment is made, at the federal judgment rate." Compl. at Ex. B at ¶ 28.  And so, the agreement specifies that plaintiff's remedy under circumstances where the government failed to make the Tax Consequences Payments is to recover the interest on this payment, calculated from the date of the government's noncompliance.

Plaintiff points to no provision in the Stipulation Agreement that would allow her to recover IRS-levied fees and penalties because the USPS did not make the Tax Consequences Payments.  In fact, as the government also correctly observes in its motion, plaintiff had a duty to mitigate any damages that she incurred because the USPS did not make these payments.  Def. Mot. at 29-30.  Such mitigation would certainly have included the timely payment of plaintiff's taxes on the payments called for under the Stipulation Agreement.  And so, plaintiff may not recover the interest and penalties resulting from her failure to timely file her taxes in this litigation.

## V.      CONCLUSION

In sum, the undisputed material facts in this breach of contract action demonstrate that plaintiff's claims are not barred by the doctrine of res judicata.  The undisputed material facts also demonstrate that the government did not breach the Stipulation Agreement by declining to reinstate plaintiff with pay.  In addition, the undisputed material facts demonstrate that the government has correctly calculated and paid the quantum of interest due to plaintiff, that plaintiff may not recover IRS-levied interest and penalties and that plaintiff's attorney's fees are limited by the terms of the Stipulation Agreement.

There are, however, material facts in dispute regarding whether the government breached the Stipulation Agreement by failing to pay the Tax Consequences Payments and whether the USPS breached this agreement by terminating plaintiff's employment in 2007.

And so, for the foregoing reasons, the Court:

1.   **DENIES** the government's motion for summary judgment on liability on the issue of whether plaintiff's claims are barred by the doctrine of res judicata;

2.   **DENIES** the government's motion for summary judgment on liability and **DENIES** plaintiff's motion for partial summary judgment on liability on the issue of whether

the government breached the Stipulation Agreement by failing to pay plaintiff's Tax Consequences Payments;

3. **GRANTS** the government's motion for summary judgment on liability and **DENIES** plaintiff's motion for partial summary judgment on liability on the issue of whether the government breached the Stipulation Agreement by failing to reinstate plaintiff with pay;

4. **DENIES** the government's motion for summary judgment on liability and **DENIES** plaintiff's motion for partial summary judgment on liability on the issue of whether the government breached the Stipulation Agreement by terminating plaintiff in 2007;

5. **GRANTS** the government's motion for summary judgment on liability and **DENIES** plaintiff's motion for partial summary judgment on liability on the issue of whether the government breached the Stipulation Agreement by failing to properly calculate the quantum of interest paid to plaintiff;

6. **GRANTS** the government's motion for summary judgment on liability on the issue of whether plaintiff's attorney's fees are limited by the terms of the Stipulation Agreement; and

7. **GRANTS** the government's motion for summary judgment on liability on the issue of whether plaintiff is entitled to recover certain IRS-levied fees and penalties.

It is further **ORDERED** that the parties shall **FILE** a joint status report, on or before

**April 25, 2017**, indicating their respective views regarding how this matter should proceed.

The Clerk shall enter judgment accordingly.

The parties shall bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge