# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 09-258C
Filed: December 21, 2017
NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| | ) | |
| GLADYS S. VANDESANDE, | ) | |
| | ) | |
| Plaintiff, | ) | RCFC 56; Summary Judgment; Breach of Contract; Waiver. |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Roderick V. Hannah*, Attorney of Record, Roderick V. Hannah, Esq. P.A., Plantation, FL, for plaintiff.

*Douglas T. Hoffman*, Trial Attorney, *Allison Kidd-Miller*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiff, Gladys S. VanDesande, a former letter carrier with the United States Postal Service (the "USPS"), brings this breach of contract action against the United States seeking to recover certain monetary damages, interest, and attorney's fees, pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1). *See generally* Compl. Plaintiff alleges in this action that the USPS materially breached a Stipulation Agreement Regarding Damages (the "Stipulation Agreement") that she entered into with the USPS to resolve certain employment discrimination and retaliation claims. *Id.*

The parties have filed renewed cross-motions for summary judgment on the issue of whether the USPS breached paragraphs 14 and 21 of the Stipulation Agreement, pursuant to

Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").  *See generally* Pl. Mot.; Def. Mot.

For the reasons discussed below, the Court **DENIES** plaintiff's renewed motion for partial summary judgment and **GRANTS-IN-PART** and **DENIES-IN-PART** the government's renewed motion for summary judgment.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this breach of contract action, plaintiff, Gladys S. VanDesande, seeks to recover certain payments, back pay, and other relief that she alleges are owed under the terms of the Stipulation Agreement that she entered into with the USPS in 2003.  *See generally* Compl. Specifically, plaintiff alleges that the USPS materially breached the Stipulation Agreement by, among other things, failing to make certain tax consequences payments.  *Id.* ¶¶ 10(b)-10(d); *id.* at Ex. B ¶¶ 1-2, 8, 14, 21, 28.  As relief, plaintiff seeks to recover monetary damages, and certain interest and fees from the government.  *Id*. at Prayer for Relief.

### 1.  Plaintiff's Removal From Employment

The material facts regarding plaintiff's breach of contract claims are undisputed.  Plaintiff is a former letter carrier with the USPS.  *See generally* Compl. at Exs. A-C.  During 1998 and 1999, the USPS denied plaintiff work and ultimately removed plaintiff from her position as a letter carrier.  *See generally id.*  Following her removal from the USPS, plaintiff brought employment discrimination claims against the USPS before the Equal Employment Opportunity Commission (the "EEOC").  *See generally id*.  On January 28, 2003, the EEOC found that the USPS had discriminated and retaliated against plaintiff in violation of the Pregnancy Discrimination Act and Title VII of the Civil Rights Act of 1964.  *Id.* at Ex. A; *see also* 42 U.S.C. §§ 2000e(k), 2000e-16.  Before the EEOC could address the issue of damages with respect to plaintiff's employment discrimination claims, plaintiff and the USPS resolved these

---

[1] The facts in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl."); the government's amended answer ("Am. Answer"); plaintiff's renewed motion for partial summary judgment ("Pl. Mot.") and the appendix attached thereto ("PA"); and the government's renewed cross-motion for summary judgment ("Def. Mot.") and the appendix attached thereto ("DA").  Unless otherwise noted, the facts recited herein are undisputed.

claims by entering into the Stipulation Agreement on June 18, 2003.  Compl. at Ex. B; Am. Answer ¶ 7.

This Stipulation Agreement provides for, among other things, certain lump sum payments to compensate plaintiff for lost wages and lost sick and annual leave; interest payments; certain tax consequences payments; and plaintiff's voluntary resignation from the USPS.  *See* Compl. at Ex. B; *see also VanDesande v. United States*, 94 Fed. Cl. 624, 627 (2010).  On June 23, 2003, the EEOC entered a Final Order that incorporated the Stipulation Agreement.  Compl. ¶ 8; *id.* at Ex. C.

Plaintiff did not return to work as a letter carrier after June 23, 2003, and she was placed on "non-duty, non-pay status pending the satisfaction by both parties of their obligations" under the Stipulation Agreement.  *See* Pl. Mot. at PA47-PA48; Def. Mot. at DA19-DA20; *see also id.* at 11, n.5.  The USPS issued a Notice of Final Action that adopted and implemented the Stipulation Agreement on August 6, 2003.  *See generally* Compl. at Ex. D.  Subsequently, in a letter dated June 13, 2007, the USPS informed plaintiff that the agency was in full compliance with the Stipulation Agreement and that it deemed plaintiff to have resigned.  *See* Pl. Mot. at PA143; Def. Mot. at DA128.

### 2.  The Stipulation Agreement

There are several provisions in the Stipulation Agreement that are relevant to this dispute.

First, paragraph 14 of the Stipulation Agreement is pertinent to plaintiff's claim that the USPS breached this agreement by failing to make certain tax consequences payments. Specifically, this provision provides, in relevant part, that:

> The Agency shall pay the Complainant a lump sum payment for all tax consequences created by all back pay and lump sum payments required in this Stipulation Agreement; including a lump sum payment to the Complainant to pay for the additional tax consequences created by the lump sum tax consequences payment required in this paragraph.  The Complainant may obtain the assistance of a certified public accountant to prepare the tax liability calculations for the back pay and lump sum payments required by this Stipulation Agreement. . . .

Compl. at Ex. B ¶ 14.  Paragraph 14 also addresses the time-frame within which the USPS must make the tax consequences payments and further provides, in relevant part, that:

> The Agency shall pay the amount of tax liability calculated by the Complainant's accountant, within one hundred and eighty (180) calendar days of service by the Complainant on the Agency's assigned representative (the designated representative as filed with the EEOC on the date of this Stipulation Agreement). If the Agency fails to pay the amount calculated by the Complainant's accountant within the required 180 calendar day time period, then the Agency shall be in breach of this Stipulation Agreement, and shall be responsible for all costs, legal fees and accountant fees incurred by the Complainant to enforce this provision of the Stipulation Agreement.  The Agency representative will be allowed to review and inspect all records used by the Complainant's accountant. . . . The Agency shall pay interest to the Complainant on all sums due for tax consequences, up to the date of receipt, allowing 21 days for mailing, at the Federal Judgment Rate. . . .

*Id*.  In addition, paragraph 14 describes the process for resolving disputes about the calculation of plaintiff's tax consequences payments and this provision provides, in relevant part, that:

> The Agency may only challenge the Complainant's submission for tax consequences by utilizing the services of another State of Florida licensed certified public accountant, who shall provide a detailed report as to the Agency's calculations of the estimated tax consequences, detailing each disputed amount; and serving such analysis on the Complainant within forty five (45) days of the Complainant's submission for payment of the tax consequences.  In any disagreement on the tax consequences, the Agency shall be required to make timely payment of the non-disputed portion of the tax consequences payment.  If the Agency disputes the amount of tax consequences submitted by the Complainant, the unpaid disputed amount of the tax liability consequences will be appealed directly to the EEOC by either party.  The EEOC shall apply the tax consequences requirements imposed in this Stipulation Agreement.  The Agency further agrees to pay the Complainant for all reasonable expenses incurred in hiring a Certified Public Accountant to calculate the tax consequences provided for in this Stipulation Agreement.  Such payment for the Complainant's CPA expenses shall be payable in conjunction with the payment for tax consequences.

*Id.*

Paragraph 29 of the Stipulation Agreement addresses the manner in which service of documents on either the USPS or plaintiff is to be accomplished under that agreement.  This provides that:

> All service of documents under this Stipulation Agreement shall be done by U.S. Postal Service Certified Mail, Return Receipt Requested PS Form 3811; and any documents returned as unclaimed or undeliverable shall be served on the affected party at least one additional (1) time to insure that proper service occurred.  Service shall be on the Complainant, the Complainant's designated representative and the Agency's designated representative.

*Id.* at ¶ 29.

In addition, Paragraph 21, which addresses plaintiff's resignation from the USPS, provides, in relevant part, that:

> The Agency shall pay the Complainant a lump sum payment of one hundred-fifteen thousand dollars ($115,000.00) to resign from her current position as a city letter carrier with the Agency and never reapply for employment with the Agency. The Agency shall only deduct federal income tax, social security and medicare deductions. No other deductions shall be made from this payment. The Agency shall pay the full lump sum payment of one hundred-fifteen thousand dollars ($115,000.00) to the Complainant after January 1, 2004, but no later than January 30, 2004. The Complainant agrees to resign from the employment of the Agency only after full compliance by the Agency of the terms of this Stipulation Agreement, including, but not limited to, all back pay and lump sum payments required in this Stipulation Agreement.

*Id.* at ¶ 21.

Lastly, paragraph 26 of the Stipulation Agreement, which addresses modifications to that agreement, provides that:

> The Complainant and the Agency agree that the only consideration for this Stipulation Agreement are the terms stated within it and that there are no other terms to this Stipulation Agreement other then [sic] those expressly written here. This Stipulation Agreement binds the parties and their assigns, agents, and successors to the stipulated damages. This Stipulation Agreement may not be modified except by a writing signed by both parties.

*Id.* at ¶ 26.

### 3. Relevant Correspondence Between The Parties

After the parties entered into the Stipulation Agreement, the USPS made approximately $560,000.00 in payments to plaintiff in 2003 and 2004. Compl. ¶ 10; Am. Answer ¶ 10; *see also* Def. Mot. at DA58. On October 21, 2004, the USPS's representative, Richard Kessler, sent a letter to plaintiff's representative and spouse, Mr. Steven VanDesande, stating that the USPS had fully complied with the Stipulation Agreement, with the exception of paragraph 14. *See* Def. Mot. at DA19-20; *see also* Pl. Mot. at PA52. Mr. Kessler also stated in this letter that the USPS had not yet received plaintiff's calculation of her tax consequences and supporting documentation. Def. Mot. at DA19.

On October 27, 2004, plaintiff sent a letter to Mr. Kessler stating that she had properly

served the USPS with a demand for payment of her tax consequences in correspondence dated March 30, 2004. Pl. Mot. at PA52; Def. Mot. at DA23. Plaintiff's October 27, 2004, letter also included a copy of her March 30, 2004, letter and supporting documentation, including plaintiff's 2003 Form 1040, Schedule B Form, W-2 USPS Form, 1099-Misc. USPS Form, and 1099-Int USPS Form. S*ee* Def. Mot. at DA15-DA17, DA23; *see also* Pl. Mot. at 9, PA44-PA45.

On December 2, 2004, the USPS retained a Certified Public Accountant ("CPA"). Pl. Mot. at PA138-PA141. On December 17, 2004, the USPS's CPA sent a letter to the USPS regarding his interpretation of the Stipulation Agreement and the tax documents required to calculate plaintiff's tax consequences.[2] *Id.* at PA142.

On December 23, 2004, Mr. Kessler sent a letter to Mr. VanDesande acknowledging the receipt of plaintiff's 2003 Form 1040, 2003 W-2 and Earnings Statement, 2003 Form 1099-MISC, and 2003 Form 1099-INT. Def. Mot. at DA25. Mr. Kessler also stated in this letter that the USPS had obtained a CPA and that the CPA had advised that the documents previously provided by plaintiff were insufficient for the calculation of plaintiff's tax consequences. *Id.* And so, the USPS denied plaintiff's request for the payment of her tax consequences. *Id.*

### 4. Plaintiff's 2006 EEOC Appeal

On January 10, 2005, plaintiff filed an appeal of the USPS's Final Agency Decision ("FAD") finding that the agency was in compliance with the Stipulation Agreement before the EEOC. Def. Mot. at DA30, DA34-DA49, DA72. On March 30, 2006, the EEOC affirmed the USPS's FAD. *Id.* at DA75.

On April 28, 2006, plaintiff filed a motion for reconsideration of the EEOC's March 30, 2006, decision. *Id.* at DA76-DA110; *see also* Pl. Mot. at PA40, PA78-PA137. Plaintiff also attached as an exhibit to her motion for reconsideration a proposed CPA-prepared tax consequence calculation for her 2003 tax consequences. Pl. Mot. at PA40-PA41, PA118-PA121; *see also* Def. Mot. at DA93-DA94. Plaintiff served her motion for reconsideration, and the accountant-prepared calculation attached thereto, on the USPS's designated representative, Richard Kessler, *via* first

---

[2] On February 9, 2005, the USPS's CPA provided the agency with an estimate of plaintiff's tax consequences in the amount of $33,691.00. Def. Mot. at DA54-DA55; *see* Pl. Mot. at 10, PA65-76. This estimate was not provided to plaintiff at the time. Pl. Mot. at 14; Def. Mot. at 7.

class mail.  Pl. Mot. at 87.  On May 17, 2006, the EEOC denied plaintiff's motion for reconsideration.  Def. Mot. at DA111-DA112.

### 5.  Plaintiff's District Court Litigation

After the EEOC denied plaintiff's motion for reconsideration, plaintiff filed a complaint against the USPS alleging breach of contract and retaliation in the United States District Court for the Southern District of Florida.  Def. Mot. at DA113-DA119; *see also VanDesande v. Potter*, No. 06-61263-CIV-Martinez-Bandstra (S.D. Fla. filed Aug. 21, 2006).  On May 31, 2007, the United States District Court for the Southern District of Florida dismissed plaintiff's case without prejudice.  Def. Mot. at DA127; *see also VanDesande v. Potter*, No. 06-61263-CIV-Martinez-Bandstra (S.D. Fla. dismissed May 31, 2007).

On May 8, 2008, plaintiff filed another complaint against the USPS alleging, among other things, sex and pregnancy discrimination and retaliation, in the United States District Court for the Southern District of Florida.  Def. Mot. at DA140-DA146; *see also VanDesande v. Potter*, No. 08-60689-CIV-Dimitrouleas (S.D. Fla. filed May 8, 2008).  On February 19, 2009, the United States District Court for the Southern District of Florida granted the government's motion to dismiss the case and dismissed the matter.  Def. Mot. at DA147-DA161; *see also VanDesande v. Potter*, No. 08-60689-CIV-Dimitrouleas (S.D. Fla. dismissed Feb. 19, 2009).

### B.  Procedural History

Plaintiff commenced this action on April 24, 2009.  *See generally* Compl.  After the government successfully moved to dismiss the complaint for lack of subject-matter jurisdiction, the Court dismissed this case upon the ground that the Stipulation Agreement is a consent decree and, as a result, plaintiff failed to state a plausible claim for breach of contract.  *VanDesande*, 94 Fed. Cl. at 636.

On October 15, 2010, plaintiff appealed the Court's decision to the United States Court of Appeals for the Federal Circuit.  Pl. Notice of Appeal, Oct. 15, 2010.  On March 23, 2012, the Federal Circuit reversed this Court's decision and held that the Stipulation Agreement "is a contract for enforcement purposes."  *VanDesande v. United States*, 673 F.3d 1342, 1351 (Fed. Cir. 2012).  And so, the Federal Circuit remanded the case to the Court on March 23, 2012.  *Id*. at 1352.

The parties participated in the Court's Alternative Dispute Resolution Program, but were unable to resolve this dispute. *See, e.g.*, ADR Status Conference Order, Mar. 4, 2013. Thereafter, the government filed an amended answer on December 2, 2014. *See generally* Am. Answer.

On February 24, 2017, the Court issued a Memorandum Opinion and Order that granted-in-part and denied-in-part the parties' cross-motions for summary judgement. *VanDesande v. United States*, No. 09-258C, 2017 WL 745734 (Fed. Cl. Feb. 24, 2017). On July 31, 2017, plaintiff filed a renewed motion for partial summary judgment. *See generally* Pl. Mot. On August 18, 2017, the government filed a renewed cross-motion for summary judgment and a response and opposition to plaintiff's renewed motion for partial summary judgment. *See generally* Def. Mot. On October 16, 2017, plaintiff filed a reply in support of her renewed motion for partial summary judgment and a response and opposition to the government's renewed cross-motion for summary judgment. *See generally* Pl. Reply. On October 30, 2017, the government filed a reply in support of its renewed cross-motion for summary judgment. *See generally* Def. Reply.

These matters having been fully briefed, the Court addresses the parties' pending cross-motions.

## III.   LEGAL STANDARDS

### A.   Jurisdiction

The United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act is, however, a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. Rather, the Tucker Act merely

8

confers jurisdiction upon the Court whenever the substantive right exists. *United States v. Testan*, 424 U.S. 392, 398 (1976). And so, to pursue a claim against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 Fed. App'x 979, 981 (Fed. Cir. 2008) (per curiam) (citing *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005)).

While the Tucker Act grants this Court jurisdiction to consider claims based "upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), the Court does not possess jurisdiction to consider claims against the United States "based on contracts implied in law." *United States v. Mitchell*, 463 U.S. 206, 218 (1983) (citing *Merritt v. United States*, 267 U.S. 338, 341 (1925)); *Aboo v. United States*, 86 Fed. Cl. 618, 626 (2009), *aff'd*, 347 Fed. App'x 581 (Fed. Cir. 2009). And so, to bring a valid contract claim against the United States in this Court, the underlying contract must be either express or implied-in-fact. *Aboo*, 86 Fed. Cl. at 626.

To establish the existence of either an express or implied-in-fact contract with the United States, a plaintiff must show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012). A government official's actual authority to bind the United States may be express or implied. *Roy v. United States*, 38 Fed. Cl. 184, 188-89 (1997), *dismissed*, 124 F.3d 224 (Fed. Cir. 1997) (without op.). And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents."[3] *Id*. at 187. The Federal Circuit has also held "that Tucker Act jurisdiction may be exercised in a suit alleging breach of a Title VII

---

[3] A government official "possesses express actual authority to bind the United States in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009), *aff'd*, 385 Fed. App'x 987 (Fed. Cir. 2010) (citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2006) (citations omitted). In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority. *Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

settlement agreement." *Holmes v. United States*, 657 F.3d 1303, 1312 (Fed. Cir. 2011) ("We do not view Title VII's comprehensive scheme as a bar to the exercise of [Tucker Act] jurisdiction.").

**B.  RCFC 56**

Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  A fact is "material" if it could "affect the outcome of the suit under the governing law." *Id*.

The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."); *Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004).  And so, the Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subs. v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010).  And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### C.   Contract Interpretation

The United States Court of Appeals for the Federal Circuit has held that "[c]ontract interpretation is a question of law." *Barron Bancshares, Inc., v. United States*, 366 F.3d 1360, 1368 (Fed. Cir. 2004); *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985); *Greenhill v. United States*, 92 Fed. Cl. 385, 393 (2010) ("The interpretation of a settlement agreement is a question of law."); *see also Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998) ("A settlement agreement is a contract, and we apply basic contract principles unless precluded by law.").  It is also well-established that the Court's interpretation of a contract begins with its "plain language." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996).  And so, the plain and unambiguous provisions of a contract "must be given their plain and ordinary meaning . . . and the court may not resort to extrinsic evidence to interpret them." *Id.* (internal citations omitted); *see also Jowett, Inc. v. United States*, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (The Court gives "the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning."); *Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed. Cir. 1992) (citations omitted) ("Wherever possible, words of a contract should be given their ordinary and common meaning.").

The Court also interprets the "provisions of a contract so as to make them consistent" and so as not "to render them ineffective or superfluous." *Abraham v. Rockwell Int'l. Corp.*, 326 F.3d 1242, 1251, 1254 (Fed. Cir. 2003); *Fortec Constructors v. United States*, 760 F.2d 1288 (Fed. Cir. 1985) ("This court must be guided by the well accepted and basic principle that an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.").  But, in instances in which there is a clear conflict between contract clauses, the Court must "determine which of the conflicting terms controls." *Abraham*, 326 F.3d at 1253-54 (citations omitted).  To do so, the Court must apply the "general rules of interpretation," which require that, "'[w]here specific and general terms in a contract are in conflict, *those which relate to a particular matter control over the more general language.*'" *Id.* at 1254 (citations omitted) (emphasis existing).

The United States Court of Appeals for the Federal Circuit has also recognized that a contract that is reasonably susceptible to more than one interpretation is ambiguous. *Hills*

*Materials Co.*, 982 F.2d at 516 (citations omitted).  Where a latent ambiguity exists in a contract, "the court will construe the ambiguous term against the drafter of the contract when the nondrafter's interpretation is reasonable," under the general rule of *contra proferentem. Id*. (citations omitted); *see also NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("To show an ambiguity it is not enough that the parties differ in their respective interpretations. . . . both interpretations must fall within the 'zone of reasonableness.'"); *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004) ("Before a court may enforce the general rule of *contra proferentem* against the drafter of an ambiguity, the contractor's interpretation of that ambiguity must be reasonable.").  But, an exception to the general rule that requires construing ambiguities against the drafter exists where the ambiguities are so patent and glaring that it is unreasonable for a party not to discover and inquire about them.  *HPI/GSA-3C*, 364 F.3d at 1334 (citations omitted).  And so, "[w]here an ambiguity is not sufficiently glaring to trigger the patent ambiguity exception, it is deemed latent and the general rule of *contra proferentem* applies." *Id*. (citations omitted).

### D.  Waiver

This Court has recognized that "'[w]aiver consists of a voluntary and intentional relinquishment of a known right.'"  *Pub. Serv. Co. of Okla. v. United States*, 91 Fed. Cl. 363, 367 (2010) (quoting *Cherokee Nation v. United States*, 355 F.2d 945, 950 (Fed. Cl. 1966)).  The United States Court of Appeals for the Federal Circuit has also held that waiver is "an affirmative defense, as to which the breaching party bears the burden of proof."  *Westfed Holdings, Inc. v. United States*, 407 F.3d 1352, 1360 (Fed. Cir. 2005) (citation omitted).

"Waiver of a contract provision may be made by a party's express declaration," or it may be implied from a party's representations or conduct surrounding performance of the contract. WILLISTON ON CONTRACTS § 39:27 (4th ed.) (footnotes omitted); *see also Pub. Serv. Co. of Okla.*, 91 Fed. Cl. at 367 (citation omitted) ("Waiver may be either express or implied.").  An implied "waiver of contractual rights may be found to exist when the conduct or acts of the party charged with the waiver have either clearly manifested an intention to waive the provision or term allegedly waived," or, in the context of waiver by estoppel, where the conduct or acts of the party charged with the waiver "reasonably induced the nonwaiving party to rely on an apparent waiver of the term or provision to its detriment".  WILLISTON § 39:27 (footnotes omitted); *see*

*Westfed Holdings, Inc.*, 407 F.3d at 1360 (citation omitted) ("Implied waiver may be inferred by conduct or actions that mislead the breaching party into reasonably believing that the rights to a claim arising from the breach was waived."). In determining whether a waiver of a contractual right has occurred, the Court may consider whether there is evidence that the alleged waiver was intentional, as well as "whether the breaching party has been misled into harmful reliance on the implied waiver of contract rights." *Pub. Serv. Co. of Okla.*, 91 Fed. Cl. at 367-68 (citations omitted).

## IV.   LEGAL ANALYSIS

The parties have filed renewed cross-motions for summary judgment on the issue of whether the USPS breached paragraphs 14 and 21 of the Stipulation Agreement. In her renewed motion for partial summary judgment, plaintiff argues that the USPS breached its obligation to pay her 2003 tax consequences under paragraph 14 of the Stipulation Agreement, because the USPS waived the accountant-prepared calculation requirement in the Stipulation Agreement by failing to demand that plaintiff provide an accountant-prepared calculation of her 2003 tax consequences. Pl. Mot. at 18-27. Plaintiff also argues that, even if the government did not waive this requirement, the government breached paragraph 14 of the Stipulation Agreement by not paying plaintiff's 2003 tax consequences and failing to follow the dispute resolution procedures set forth in the Stipulation Agreement. *Id.* at 27-32. Finally, plaintiff argues that the USPS breached paragraph 21 of the Stipulation Agreement, because the USPS had not satisfied all of the agency's obligations under the terms of the Stipulation Agreement at the time that the USPS terminated plaintiff's employment. *Id.* at 32-33.

In its opposition and cross-motion, the government counters that the USPS is not liable to plaintiff for a breach of either paragraph 14 or paragraph 21 of the Stipulation Agreement for five reasons. First, the government argues that plaintiff has waived her argument that the USPS waived the Stipulation Agreement's accountant-prepared calculation requirement, because she did not raise this argument during the prior round of summary judgment briefing in this litigation. Def. Mot. at 14-15. Second, the government argues that the USPS's conduct did not result in an implied waiver of this requirement, because plaintiff did not reasonably believe that the USPS's conduct signified a waiver of the accountant-prepared calculation requirement. *Id.* at 15-19. Third, the government argues that, even if an implied waiver occurred, the USPS has no

obligation to pay the agency's estimate of plaintiff's 2003 tax consequences, because this estimate was based upon unfiled tax returns and plaintiff has abandoned any resolution of her claim under the Stipulation Agreement's dispute resolution procedures. *Id.* at 20-25.

Fourth, the government argues that the USPS also has no obligation to pay plaintiff's 2003 tax consequences based upon the accountant-prepared calculation that plaintiff provided to the USPS in 2006, because, among other things, plaintiff failed to comply with the Stipulation Agreement's requirement to serve this calculation *via* certified mail and the calculation was based upon incorrect data. *Id.* at 25-29. Finally, the government argues that plaintiff's claim that the USPS breached paragraph 21 of the Stipulation Agreement should be dismissed for failure to state a claim upon which relief may be granted—and otherwise denied—because plaintiff has not identified any damages resulting from the alleged breach and the USPS did not breach this provision. *Id.* at 29-31.

For the reasons discussed below, the undisputed material facts in this matter show that plaintiff has not waived her argument that the USPS waived the Stipulation Agreement's accountant-prepared calculation requirement with respect to her 2003 tax consequences. The undisputed material facts also show that the USPS has not waived this requirement.

In addition, the factual record demonstrates that plaintiff has not complied with the Stipulation Agreement's requirement that she serve the USPS with an accountant-prepared calculation of her 2003 tax consequences *via* certified mail. Lastly, the factual record also makes clear that plaintiff fails to state a plausible claim for breach of paragraph 21 of the Stipulation Agreement. And so, the Court **DENIES** plaintiff's renewed motion for partial summary judgment and **GRANTS-IN-PART** and **DENIES-IN-PART** the government's renewed cross-motion for summary judgment.

### A.   Plaintiff Has Not Waived Her Waiver Argument

As an initial matter, the Court is not persuaded by the government's argument that plaintiff has waived her argument that the USPS waived the Stipulation Agreement's requirement that plaintiff provide the USPS with an accountant-prepared calculation of her 2003 tax consequences. In its cross-motion for summary judgment, the government argues that plaintiff waived this argument because she failed to raise a waiver argument during the prior round of summary judgment briefing in this litigation. Def. Mot. at 14-15. In this regard, the

14

government relies upon the United States Court of Appeals for the Federal Circuit's decision in *Novosteel SA v. United States*, where the Federal Circuit held that an argument presented by a party for the first time in a reply brief filed before this Court is waived on appeal. *See id.*; *see also Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed Cir. 2002). The government's reliance on *Novosteel* is misplaced.

In *Novosteel*, the United States Court of Appeals for the Federal Circuit concluded that it must consider an argument raised for the first time in a reply brief during proceedings before this Court as waived on appeal, "as a matter of litigation fairness and procedure," because the non-moving party had no right to respond to the argument below. *Novosteel SA*, 284 F.3d at 1274. The Federal Circuit recognized, however, that this waiver rule is a prudential doctrine that allows a court to exercise discretion when deciding whether to consider an issue that has not been previously raised by a party. *See Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 127 Fed. App'x 493, 497 (Fed. Cir. 2005); *see also AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 666-67 (2014). And so, to the extent that the waiver rule is applicable to the present proceedings, the Court must consider whether it is appropriate to apply this rule as a matter of litigation fairness and procedure in this case. *AM Gen., LLC*, 115 Fed. Cl. at 666-67; *see also Novosteel SA*, 284 F.3d at 1274.

Application of the waiver rule is inappropriate here. The government correctly observes in its cross-motion that plaintiff raised her argument that the USPS waived the Stipulation Agreement's accountant-prepared calculation requirement for the first time in her renewed motion for partial summary judgment. Def. Mot. at 14-15. But, a review of plaintiff's renewed motion for partial summary judgment makes clear that plaintiff advanced this argument in her opening brief. Pl. Mot. at 18-27. A review of the government's renewed cross-motion also makes clear that the government has had ample opportunity to respond to plaintiff's waiver argument during the course of the extensive briefing in connection with the parties' cross-motions. *See generally* Def. Mot.; Def. Reply. Given this, litigation fairness and procedure do not dictate that plaintiff be precluded from raising her waiver argument in this litigation.

*Novosteel SA*, 284 F.3d at 1274.  And so, the Court declines to deem plaintiff's argument waived.[4]  *Id*.

### B.  The USPS Did Not Waive The Accountant-Prepared Calculation Requirement

While plaintiff may raise her waiver argument in this litigation, the undisputed material facts in this case make clear that this argument is without merit.  In her motion for partial summary judgment, plaintiff argues that the USPS's designated representative, Richard Kessler, waived the Stipulation Agreement's requirement that plaintiff provide the agency with an accountant-prepared calculation of her 2003 tax consequences, by failing to demand that plaintiff provide such a calculation in his correspondence with plaintiff in 2004.  *Id*. at 20-27.  And so, plaintiff contends that Mr. Kessler's actions in this regard constitute an implied or constructive waiver of the accountant-prepared calculation requirement.  *Id*.

The United States Court of Appeals for the Federal Circuit has held that an "[i]mplied waiver may be inferred by conduct or actions that mislead a party into reasonably believing that [its] rights to a claim arising from a breach was waived."  *Westfed Holding*, 407 F.3d at 1361 (citing *N. Helex Co. v. United States*, 455 F.2d 546, 551 (Ct. Cl. 1972)).  In addition, the United States Court of Appeals for the Federal Circuit has recognized that "[w]aiver is an affirmative defense, as to which the breaching party bears the burden of proof."  *Westfed Holding*, 407 F.3d at 1360 (citing *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1299 (Fed. Cir. 2002)).[5] And so, plaintiff bears the burden of showing that an implied waiver has occurred in this case.

---

[4] For these same reasons, the Court also declines to apply the waiver rule to plaintiff's argument that the USPS is obligated to pay her 2003 tax consequences based upon the accountant-prepared calculation that she provided to the USPS in April 2006.  *See* Def. Mot. at 25-26.

[5] Within the context of government contracts disputes, this Court has identified four elements necessary to establish an implied or constructive waiver of contractual rights:

> [When] the contractor is attempting to prove that it was entitled to deviate from the exact terms of the contract . . . a plaintiff must demonstrate four elements: '(1) The [contracting officer] had notice that the work differed from contract requirements.  (2) Action or inaction of the [contracting officer] indicated that the non-specification performance was acceptable.  (3) The contractor relied on the [contracting officer]'s action or inaction.  (4) It would be unfair to permit the Government to retract the waiver.'

Plaintiff has not met her burden to show that Mr. Kessler's 2004 correspondence—or, specifically, his failure to request an accountant-prepared calculation—mislead her into reasonably believing that the USPS waived the Stipulation Agreement's accountant-prepared calculation requirement for several reasons.  First, while there is no dispute that Mr. Kessler did not specifically request that plaintiff provide an accountant-prepared calculation in his 2004 correspondence, this conduct is understandable given the nature of the dispute between the parties at that time.  Def. Mot. at 16; Pl. Mot. at 22-25.  As the government observes in its cross-motion, the dispute between the parties at the time pertained to a disagreement about the meaning of the term "tax consequences" as that term is used in the Stipulation Agreement.  Def. Mot. at 15-19.  Because the parties disagreed about the very meaning of this term, obtaining an accountant-prepared calculation of plaintiff's tax consequences would have been of little use to the USPS before the parties resolved this overarching dispute.  Given this, Mr. Kessler's conduct does not appear to the Court to be misleading, or to suggest that the USPS no longer intended to enforce the Stipulation Agreement's accountant-prepared calculation requirement.

Second, plaintiff's argument that the aforementioned conduct misled her into reasonably believing that the USPS waived the accountant-prepared calculation requirement is belied by her own actions.  *See* Pl. Mot. at 18-27.  It is without dispute that plaintiff provided the USPS with an accountant-prepared calculation of her 2003 tax consequences in 2006, in connection with her EEOC appeal.  Def. Mot. at 26-27; *see also* Pl. Mot. at 28; Def. Mot. at DA76-DA110.  In fact, plaintiff relies upon this 2006 calculation to pursue her breach of contract claim in this case.  Pl. Mot. at 27-32.  Given this, the Court finds plaintiff's conduct difficult to reconcile with her argument that the USPS misled her into reasonably believing that the agency waived the Stipulation Agreement's accountant-prepared calculation requirement in 2004.

Lastly, plaintiff also fails to explain why she failed to previously raise this waiver claim.  *See generally id.* at 18-27.  More than a decade has elapsed since plaintiff received Mr. Kessler's letters, and plaintiff commenced this action in 2009—more than eight years ago.  Given this, plaintiff simply has not met her burden to show that she reasonably believed that the USPS

---

*Hannon Elec. Co. v. United States,* 31 Fed. Cl. 135, 147 (1994) (quoting Ralph C. Nash & John Cibinic, *Constructive Waiver of Specifications: Coat of Many Colors*, 6 NASH & CIBINIC REP. ¶ 43 at 107 (1992)).

waived the Stipulation Agreement's accountant-prepared calculation requirement. *Id.* And so, the Court **DENIES** plaintiff's motion for partial summary judgment and **GRANTS** the government's cross-motion for summary judgment on this issue.

### C. Plaintiff Has Not Complied With The Stipulation Agreement's Accountant-Prepared Calculation Requirement

Because plaintiff has not established that the USPS waived the Stipulation Agreement's accountant-prepared calculation requirement, the Court next examines whether plaintiff has complied with this requirement. For the reasons discussed below, the undisputed material facts show that plaintiff has not done so.

In her motion for partial summary judgment, plaintiff argues that she complied with the Stipulation Agreement's accountant-prepared calculation requirement in 2006, when she served the USPS's designated representative with a copy of her motion for reconsideration in connection with her EEOC appeal. Pl. Mot. at 27-32. It is undisputed that an accountant-prepared calculation of plaintiff's 2003 tax consequences was attached to this motion. *See* Pl. Mot. at 27-32; Def. Mot. at 26-27; *see also* Pl. Mot. at PA40-PA41, PA77-PA137; Def. Mot. at DA76-DA110. And so, plaintiff contends that the USPS breached paragraph 14 of the Stipulation Agreement by failing to either pay her 2003 tax consequences, or to follow the dispute resolution procedures set forth in the Stipulation Agreement, after receiving this EEOC filing. Pl. Mot. at 27-32.

The undisputed material facts in this case do not substantiate plaintiff's claim. As the Court observed in its February 24, 2017, Memorandum Opinion and Order, paragraph 14 of the Stipulation Agreement addresses the USPS's obligation to pay or dispute plaintiff's 2003 tax consequences calculation and this provision provides, in relevant part, that:

> The Agency shall pay the amount of tax liability calculated by the Complainant's accountant, *within one hundred and eighty (180) calendar days of service by the Complainant on the Agency's assigned representative* (the designated representative as filed with the EEOC on the date of this Stipulation Agreement). If the Agency fails to pay the amount calculated by the Complainant's accountant within the required 180 calendar day time period, then the Agency shall be in breach of this Stipulation Agreement, and shall be responsible for all costs, legal fees and accountant fees incurred by the Complainant to enforce this provision of the Stipulation Agreement. . . .

*VanDesande*, 2017 WL 745734, at *4 (emphasis supplied); *see also* Compl. at Ex. B ¶ 14. Paragraph 14 also describes the process for resolving any disputes about the calculation of plaintiff's tax consequences payments and the provision provides, in relevant part, that:

> The Agency may only challenge the Complainant's submission for tax consequences by utilizing the services of another State of Florida licensed certified public accountant, who shall provide a detailed report as to the Agency's calculations of the estimated tax consequences, detailing each disputed amount; *and serving such analysis on the Complainant within forty five (45) days of the Complainant's submission for payment of the tax consequences*. In any disagreement on the tax consequences, the Agency shall be required to make timely payment of the non-disputed portion of the tax consequences payment. If the Agency disputes the amount of tax consequences submitted by the Complainant, the unpaid disputed amount of the tax liability consequences will be appealed directly to the EEOC by either party. The EEOC shall apply the tax consequences requirements imposed in this Stipulation Agreement. . . .

Compl. at Ex. B ¶ 14 (emphasis supplied). And so, under the terms of the Stipulation Agreement, the USPS's obligation to either pay or dispute plaintiff's accountant-prepared calculation of her tax consequences is activated by the proper service of this calculation on the USPS. *Id.*

Specifically relevant here, paragraph 29 of the Stipulation Agreement describes the manner of service of documents under the Stipulation Agreement and this provision provides that:

> *All service of documents under this Stipulation Agreement shall be done by U.S. Postal Service Certified Mail, Return Receipt Requested PS Form 3811*; and any documents returned as unclaimed or undeliverable shall be served on the affected party at least one additional (1) time to insure that proper service occurred. Service shall be on the Complainant's designated representative and the Agency's designated representative.

*Id.* at Ex. B ¶ 29 (emphasis supplied). And so, the plain text of Stipulation Agreement requires that plaintiff serve her accountant-prepared calculation on the USPS's designated representative *via* United States Postal Service certified mail, return receipt requested. *Id.*

There is no dispute that plaintiff did not comply with this requirement. Pl. Mot. at 31; Def. Mot. at 27-28. Indeed, as discussed above, plaintiff acknowledges that she served the accountant-prepared calculation of her 2003 tax consequences on the USPS *via* first class mail— as an attachment to her motion for reconsideration before the EEOC. Pl. Mot. at 31. Plaintiff

also acknowledges that, in doing so, she did not comply with the requirements of the Stipulation Agreement. *Id.* Given these undisputed facts, plaintiff has not shown that she complied with the Stipulation Agreement's requirement to provide an accountant-prepared calculation of her 2003 tax consequences to the USPS.

The Court is also unpersuaded by plaintiff's argument that she still may pursue her breach of contract claim because she substantially complied with the Stipulation Agreement's requirement to provide an accountant-prepared calculation *via* certified mail. *Id.* at 27-32. In this regard, plaintiff argues that the purpose of this requirement is "to ensure that the party to whom notice was sent would actually receive the notice and that a paper trail of notice and receipt was made." *Id.* at 31. And so, plaintiff contends that this purpose has been satisfied here, by the service of her motion for reconsideration. *Id.*

The Court does not, however, share plaintiff's point of view. *Id.* While substantial compliance can occur when "a good-faith attempt to perform does not precisely meet the terms of an agreement," the essential purpose of the Stipulation Agreement's terms must still be accomplished. *See Substantial-Performance Doctrine*, BLACK'S LAW DICTIONARY (10th ed. 2014) (The substantial performance doctrine, also termed the substantial compliance doctrine, provides that "if a good faith attempt to perform does not precisely meet the terms of an agreement or statutory requirements, the performance will still be considered complete if the essential purpose is accomplished, subject to a claim for damages for the shortfall."). Plaintiff correctly argues that a purpose of the Stipulation Agreement's requirement to serve the accountant-prepared calculation *via* certified mail is to ensure that the USPS receives the calculation. Pl. Mot. at 31. But, another essential purpose of this requirement is make clear to the USPS that this calculation is being provided for the purpose of activating the Stipulation Agreement's payment and dispute resolution provisions.[6] Plaintiff did not accomplish this goal by simply attaching the accountant-prepared calculation to her EEOC filing and serving this

---

[6] Plaintiff argues with some persuasion that the intent to activate the Stipulation Agreement's payment and dispute resolution procedures is clear from the language in her motion for reconsideration. Pl. Mot. at PA86; Pl. Reply at 25-26. But, plaintiff fails to explain why she did not provide the USPS with a copy of her accountant-prepared calculation *via* certified mail. *See* Pl. Mot. at 27-32; Pl. Reply at 25-28.

filing on the USPS.[7]  Given this, plaintiff has not substantially complied with the Stipulation Agreement requirements.  And so, the Court **DENIES** plaintiff's motion for partial summary judgment and **GRANTS** the government's cross-motion for summary judgment on the issue of whether plaintiff has complied with the Stipulation Agreement's requirement to provide the USPS with an accountant-prepared calculation of her 2003 tax consequences.

### D.   The Court Must Dismiss Plaintiff's Claim That The USPS Breached Paragraph 21 Of The Stipulation Agreement

As a final matter, the Court must dismiss plaintiff's breach of contract claim based upon paragraph 21 of the Stipulation Agreement, because plaintiff fails to state a plausible claim for relief.  RCFC 12(b)(6).  In its cross-motion for summary judgment, the government persuasively argues that the Court should dismiss this claim because any breach of paragraph 21 would not result in damages, given that plaintiff served in a non-pay, non-duty status prior to her termination.  Def. Mot. at 29-30.

In this regard, there is no dispute that plaintiff was placed on non-pay, non-duty status in 2003 and that she remained in this status until she resigned from the USPS.  *See* Pl. Mot. at PA47-PA48; *see also* Def. Mot. at DA19-DA20; *id.* at 11, n.5.  And so, there is also no dispute that plaintiff would not be able to recover lost wages in this matter if she were able to establish that the USPS breached paragraph 21 of the Stipulation Agreement.  *See* Pl. Mot. at PA47-PA48; *see also* Def. Mot. at DA19-DA20; *id.* at 11, n.5.

Plaintiff correctly argues that she may recover other benefits in this breach of contract action—including retirement benefits that may have been forfeited when the USPS terminated her employment.  Pl. Reply at 30-31.  But, plaintiff neither identifies these alleged benefits, nor explains how the loss of such benefits could result in any damages in this case.  *See id.*; *see also* Compl. ¶¶ 10(c), 15.  Given this, the Court agrees with the government that it is appropriate to

---

[7] Even if the Court were to conclude that plaintiff substantially complied with the Stipulation Agreement's requirement to provide an accountant-prepared calculation of her 2003 tax consequences *via* certified mail, the undisputed material facts in this case show that plaintiff's 2006 accountant-prepared calculation is based upon questionable data.  The government represents in its cross-motion that plaintiff's accountant-prepared calculation is based upon an incorrect tax burden of $133,342.00 for 2003.  Def. Mot. at 26-27; *see also* Pl. Mot. at PA118-PA121; Def. Mot. at DA 93-DA96, DA191-195.  By comparison, the government also represents that it has established that plaintiff's actual tax burden in 2003 was approximately $85,157.00.  Def. Mot. at 27, DA191-DA194.  Plaintiff does not dispute the government's representations.  Pl. Reply at 12.

dismiss plaintiff's breach of contract claim based upon paragraph 21 of the Stipulation Agreement for failure to state a plausible claim for relief.  RCFC 12(b)(6).[8]

## V.    CONCLUSION

In sum, the undisputed material facts in this breach of contract action show that plaintiff has not waived her argument that the USPS waived the accountant-prepared calculation requirement under the Stipulation Agreement.  The undisputed material facts also show, however, that the USPS has not waived this requirement.

In addition, the factual record in this matter demonstrates that plaintiff has not complied with the Stipulation Agreement's requirement to serve the USPS's designated representative with an accountant-prepared calculation of her 2003 tax consequences *via* certified mail.  Lastly, the factual record also makes clear that plaintiff fails to state a plausible breach of contract claim with regards to paragraph 21 of the Stipulation Agreement, because any breach of that provision would not result in any damages.

And so, for the foregoing reasons, the Court:

1.  **DENIES** the government's motion for summary judgment on the issue of whether plaintiff has waived her argument that the USPS waived the Stipulation Agreement's accountant-prepared calculation requirement;

2.  **GRANTS** the government's motion for summary judgment and **DENIES** plaintiff's motion for partial summary judgment on the issue of whether the USPS waived the Stipulation Agreement's accountant-prepared calculation requirement;

3.  **GRANTS** the government's motion for summary judgment and **DENIES** plaintiff's motion for partial summary judgment on the issue of whether the USPS is obligated to pay plaintiff's 2003 tax consequences based upon the accountant-prepared calculations that plaintiff provided to the USPS in 2006;

4.  **GRANTS** the government's motion for summary judgement and **DENIES** plaintiff's motion for partial summary judgment on the issue of whether the USPS breached paragraph 21 of the Stipulation Agreement; and

---

[8] Because the Court concludes that the USPS did not waive the Stipulation Agreement's accountant-prepared calculation requirement, the Court does not reach the issue of whether the USPS has an obligation to pay the agency's 2005 accountant-prepared tax consequences estimate.  In addition, because the Court dismisses plaintiff's breach of contract claim based upon paragraph 21 for failure to state a claim upon which relief can be granted, the Court does not reach the other issues raised by the government with respect to this claim.

5.   **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

The parties shall bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge